No. 05-252 T
(Judge Charles F. Lettow)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

EDWARD MARANDOLA, JR. and CARMEN MARANDOLA,

Plaintiffs

v.

THE UNITED STATES,

Defendant

# BRIEF FOR THE UNITED STATES IN SUPPORT OF THE CROSS MOTION OF THE UNITED STATES FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
MARY M. ABATE
JEFFREY R. MALO
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-7539
(202) 514-9440 (facsimile)

# TABLE OF CONTENTS

Page

Reply for the United States in support of the cross motion of the United States for summary judgment and in opposition to plaintiff's motion for summary judgment . . . . . 1
Question presented . . . . . 1
Statutes and regulations involved . . . . . 2
Statement . . . . . 2

Argument:

Plaintiff is not entitled to use the mark-to-market method of accounting for tax years 1997-1999 . . . . . 6

A. Plaintiff did not make a timely valid election to use the mark-to-market method of accounting . . . . . 6

1. Use of the mark-to-market method of accounting by traders in securities is governed by Code § 475 and Revenue Procedure 99-17 . . . . . 6

a. Section 475 . . . . . 6

b. Revenue Procedure 99-17 . . . . . 10

2. Plaintiff failed to follow the exclusive procedure for electing use of the mark-to-market method of accounting . . . . . 13

a. Mr. Marandola failed to make a timely valid election for the 1997 tax year . . . . . 14

b. Mr. Marandola failed to make a timely valid election for 1998 tax year . . . . . 15

c. Mr. Marandola failed to make a timely valid election for 1999 tax year . . . . . 16

**Page**

B. Plaintiff is not entitled to relief under Treasury Regulations § 301.9100 . . . . . 18

1. Plaintiff's request for relief under § 301.9100 is barred by the substantial variance rule . . . . . 18

2. Alternatively, plaintiff has failed to establish that he is otherwise entitled to § 9100 relief . . . . . 20

a. Mr. Marandola failed to establish that he acted reasonably and in good faith . . . . . 21

b. Mr. Marandola failed to establish that the relief sought is not prejudicial to the interests of the Government . . . . . 24

c. Denial of § 9100 relief is consistent with *Vines v. Commissioner*; *Vines* does not support plaintiff . . . . . 26

Conclusion . . . . . 28

Appendix A:

Internal Revenue Code of 1986 (26 U.S.C.) . . . . . 29

Treasury Regulations (26 C.F.R.) . . . . . 42

Appendix B:

Rev. Proc. 99-17, 1997-7 I.R.B. 52, 1999-1 C.B. 503 . . . . . 57

Rev. Rul. 90-38, 1990-1 C.B. 57 . . . . . 63

TABLE OF AUTHORITIES

**Cases:** **Page**

*Acar v. United States*, slip copy, 2006 WL 2374636 (N.D. Cal. 2006) . . . . . 18,27

*Diebold, Inc. v. United States*, 891 F.2d 1579, 1583 (Fed. Cir. 1989), *cert. denied*, 498 U.S. 823 (1990) . . . . . 13

*Lehrer v. Commissioner*, T.C. Memo. 2005-167 (2005) . . . . . 27

*Lockheed Martin Corp. v. United States*, 210 F.3d 1366 (Fed. Cir. 2000) . . . . . 19

*Moller v. United States*, 721 F.2d 810 (Fed Cir. 1983) . . . . . 6

*Ottawa Silica Co. v. United States*, 699 F.2d 1124 (Fed. Cir. 1983) . . . . . 19

*Union Pac. R.R. v. United States*, 389 F.2d 437 (Ct. Cl. 1968) . . . . . 19

*USA Choice Internet Services, LLC v. United States*, _____ Fed. Cl. ____, 2006 WL 3333782 at 8-9 (November 16, 2006) . . . . . 19

*Vines v. Commissioner*, 126 T.C. 279 (2006), 2006 WL 11280960 . . . . . 26,27

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 446 . . . . . 13
§ 475 . . . . . *passim*
§ 481 . . . . . 8,14,24,25
§ 1222 . . . . . 13
§ 6511 . . . . . 4
§ 7422 . . . . . 18

The Taxpayer Relief Act of 1997, Pub. L. No. 105-34, 111 Stat. 788 (Aug. 5, 1997) . . . . . 6,10,22

**Miscellaneous:** **Page**

H.R. Conf. Rep. No. 105-220, 105th Cong., 1st Sess. 515 (1997) . . . . . . . . . . . . 8-9

H.R. Rep. No. 105-148, 105th Cong.,1st Sess. 444 (1997) . . . . . . . . . . . . . . . . . 7,8

Rev. Proc. 99-17, 1997-7 I.R.B. 52, 1999-1 C.B. 503 . . . . . . . . . 2,10-17,21-22,25

Rev. Rul. 90-38, 1990-1 C.B. 57 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Treasury Regulations (26 C.F.R.):

§ 1.446-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,24
§ 301.6402-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
§ 301.9100-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-28

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 05-252 T**
**(Judge Charles F. Lettow)**

**EDWARD MARANDOLA, JR. and**
**CARMEN MARANDOLA,**

**Plaintiffs,**

**v.**

**THE UNITED STATES,**

**Defendant.**

**BRIEF FOR THE UNITED STATES IN SUPPORT OF THE CROSS MOTION OF THE UNITED STATES FOR SUMMARY JUDGEMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This is a tax refund suit in which plaintiffs seek a refund of federal income tax and assessed interest in the total amount of $1,946,497 for the taxable periods ending December 31, 1996 through December 31, 1999.

## QUESTION PRESENTED

In 2000, plaintiff Edward Marandola filed amended tax returns for the 1996 through 1999 tax years. On the amended returns for the 1997 through 1999 years, Mr. Marandola applied the mark-to-market method of accounting for traders in securities provided in Internal Revenue Code ("IRC" or "Code") § 475(f) (26 U.S.C.), even though he had not properly elected the mark-

to-market method under the procedures prescribed by Revenue Procedure ("Rev. Proc.") 99-17. Use of the mark-to-market method resulted in a claimed substantial net operating loss ("NOL") for the 1998 year. Mr. Marandola carried back the loss reflected on the 1998-year amended return to the 1997- and 1996-year amended returns, to offset income in those prior years. On the amended returns for the 1996 through 1998 tax years, Mr. Marandola claimed refunds resulting from his use of the mark-to-market method.[1] Continued application of the mark-to-market method resulted in Mr. Marandola's additional claim for a refund for the 1999 year. On September 30, 2004, the Internal Revenue Service ("IRS") denied all but $8,419 of the Marandolas' claim for 1996, and denied in full Mr. Marandola's claims for 1997 through 1999.

The issue before the Court is whether Mr. Marandola is precluded from using the mark-to-market method of accounting for traders in securities, for the tax years ended December 31, 1997 through 1999, because he failed to make a timely valid election to do so under § 475(f).

## STATUTES AND REGULATIONS INVOLVED

The relevant statutes and regulations are set forth in Appendix A, *infra*.

## STATEMENT

The plaintiffs, Edward Marandola, Jr. ("Mr. Marandola") and Carmen Marandola ("Mrs. Marandola"), were married taxpayers who filed a joint tax return for the tax year ended December 31, 1996. (Stip. ¶ 2; Stip. Ex. 1 Part 1 at X-3 "Filing Status").[2] The original due date

---

[1]The claimed NOL carry back also gave rise to his former wife's claim to a refund for 1996 (the last year that he and his former wife filed a joint tax return).

[2] Citations herein to "Stip." are to the parties' Stipulation of Facts filed October 23, 2006; citations to "Stip. Ex." are to exhibits accompanying the parties' Stipulation of Exhibits filed October 23, 2006.

for the Marandola's 1996 tax return was extended from April 15, 1997 to October 15, 1997. (Stip. Ex. 1 Part 1 at X-3 "Extension Granted to 10/15/97"). The return was filed on October 17, 1997.[3] (Stip. ¶ 2). The 1996 return reported tax due of $1,395,181. (Stip. ¶ 3, Stip. Ex. 1 Part 1 at X-8 "line 62"). All gains and losses from the Marandolas' sale of stock and securities in 1996 were reported as capital gains and losses. (Stip. ¶ 4, Stip Ex. 1 Part 1 at X-12 ,"Schedule D").

After Mr. and Mrs. Marandola divorced, they filed separate tax returns for the tax year ended December 31, 1997 and all subsequent tax years. (Compl. ¶ 8 Stip. ¶¶ 7, 13, 19; Stip. Exs. 5, 8, 11).[4]

During 1997, Edward Marandola traded stock with sufficient volume and frequency to qualify as a "trader in securities" for purposes of Code § 475. (Stip ¶ 1). Mr. Marandola filed his 1997 income tax return on October 17, 1998.[5] (Stip. ¶ 7). The 1997 return reported tax due of $1,956,803. (Stip ¶ 7, Stip. Ex. 5 Part 1 at X-2 "line 53 less line 60"). Mr. Marandola did not calculate his tax due using the mark-to-market method of accounting, nor did he otherwise evidence his intent to use the mark-to-market method on his original 1997 income tax return. Stip. ¶ 9).

The following year Mr. Marandola filed his 1998 income tax return on October 19, 1999.[6] (Stip. ¶ 13). The 1998 return reported tax due of $45,475. (Stip. ¶ 13, Stip. Ex. 8 Part 1

[3]The timeliness of the filing of the return is not at issue.

[4]Carmen Marandola is a plaintiff in the present action solely by virtue of the joint tax return she filed with Mr. Marandola for 1996. The individual tax returns filed by Mrs. Marandola for 1997 and subsequent tax years are not in dispute. Hereinafter the plaintiffs will be referred to in the singular as Mr. Marandola.

[5]The timeliness of the filing of the return is not at issue.

[6]The timeliness of the filing of the return is not at issue.

at X-3 "Line 68"). Mr. Marandola did not calculate his 1998 tax liability using the mark-to-market method of accounting, nor did he otherwise evidence his intent to use the mark-to-market method on his original 1998 income tax return. (Stip. ¶ 15).

On January 24, 2000, Mr. Marandola filed Forms 1040X amended returns (refund claims) for the tax years ended December 31, 1996 through 1998. (Stip. ¶¶ 2, 5, 7, 10, 13, 16; Stip. Exs. 3, 7, 10). The amended returns were filed within the relevant three-year statute of limitations.[7] (Stip. ¶¶ 5, 10, 16). On the amended returns Mr. Marandola used the mark-to-market method of accounting provided in Code § 475(f) to compute gains and losses on securities transactions for the 1997 and 1998 tax years. (Stip. ¶¶ 10, 16). Application of the mark-to-market method in Mr. Marandola's computation reduced his taxable income originally reported for 1998 to a claimed net operating loss of $2,337,767. (Stip. Ex. 10 Part 2 at X-23 "line 28"). In calculating his tax due on the amended returns, Mr. Marandola carried back the claimed 1998 loss to 1997 and 1996, offsetting a portion of the prior-year liabilities reported on the original returns. Mr. Marandola claimed refunds on the amended returns in the amounts of $961,947 for 1996; $615,190 for 1997; and $271,295 for 1998. (Stip. ¶¶ 5, 10, 16; Stip. Exs. 3,7, 10).

After the January 2000 amended filings for tax years 1996, 1997, and 1998, Mr. Marandola filed his original 1999 individual tax return on October 19, 2000.[8] (Stip. ¶ 19). Even though Mr. Marandola filed his 1996 through 1998 amended returns (claiming use of the mark-

---

[7]IRC §6511(a) provides that a claim for credit or refund must be filed within the later of three years from the time the return is filed or two years from the time the tax is paid.

[8]The timeliness of the filing of the return is not at issue.

to-market method) just nine months prior to filing his original tax return for 1999, he did not calculate his tax liability on the original 1999 return using the mark-to-market method or otherwise evidence his intent to use the mark-to-market method of accounting with respect to securities transactions during 1999. (Stip. ¶ 21). Instead, one month after filing his original 1999 tax return, Mr. Marandola filed an amended return for that year to reflect application of the mark-to-market method. (Stip. ¶ 23). The 1999 amended return was filed on November 21, 2000 and claimed a refund due of $106,484. (Stip. ¶ 22).

As reported on his original income tax returns, Mr. Marandola's total tax liability for 1996 through 1999 was $4,279,346. He paid those reported tax liabilities through a series of subsequent payments or overpayment credits. (Stip. ¶¶ 3, 8, 14, 20). If Mr. Marandola had made a timely valid election under Code § 475(f) to use the mark-to-market method of accounting, his computed total tax liability for the same four-year period would have been $2,234,430. Thus, Mr. Marandola's attempt to make a late election in January and November of 2000, if successful, would have resulted in a reduction in his reported tax liabilities for the four-year period totaling $1,954,916.

## ARGUMENT

### PLAINTIFF IS NOT ENTITLED TO USE THE MARK-TO-MARKET METHOD OF ACCOUNTING FOR TAX YEARS 1997-1999

### A. Plaintiff Did Not Make a Timely Valid Election to Use the Mark-to-Market Method of Accounting

#### 1. Use of the mark-to-market method of accounting by traders in securities is governed by Code § 475 and Revenue Procedure 99-17

##### a. Section 475

In the summer of 1997 Congress enacted, and President Clinton signed, the Taxpayer Relief Act of 1997 (the "Taxpayer Relief Act" or the "Act").[9] Among the benefits the Act created was the option for taxpayers who qualified as "traders in securities" to elect the mark-to-market method of accounting for gains and losses on securities held at year end.[10]

Prior to enactment of the Taxpayer Relief Act, the mark-to-market method of accounting with respect to securities transactions was available only to *dealers* in securities. That method is governed by Code § 475(a), which provides for, *inter alia*, non-inventory securities held by a dealer at year end to be accounted for, for purposes of computing taxable income, as if they had

---

[9]The Taxpayer Relief Act of 1997, Pub. L. No. 105-34, 111 Stat. 788 (Aug. 5, 1997), was introduced in the House of Representatives on June 24, 1997. After initial approval by the House and the Senate Committees, the bill was sent to the House Conference Committee. It emerged from Committee for final passage in both Houses of Congress on July 31, 1997. It was signed into law by President Clinton on August 5, 1997.

[10] In determining whether a taxpayer is a *trader* in securities, "relevant considerations are the taxpayer's investment intent, the nature of the income to be derived from the activity, and the frequency, extent, and regularity of the taxpayer's securities transactions." *Moller v. United States*, 721 F.2d 810, 813 (Fed. Cir. 1983). Mr. Marandola's status as a "trader in securities" is not at issue here. At issue is whether he is entitled to make a late mark-to-market election that first became available to traders in securities in 1997.

been sold at fair market value on the last business day of the year.[11] Under § 475(d)(3), as a general rule, "any gain or loss with respect to a security under subsection (a)(2) shall be treated as ordinary income or loss."

Whereas *dealers* in securities regularly engage in securities transactions with customers, in the course of their trade or business (*see* § 475(c)(1)), *traders* in securities "generally are taxpayers who engage in a trade or business involving active sales or exchanges of securities on the market, rather than to customers." H.R. Rep. No. 148, 105th Cong. 1st Sess., at 444 (1997), *as reprinted in* 1997 U.S.C.C.A.N. 678, 838 (emphasis added). The House Committee explained that securities traders would be able to elect to use the mark-to-market method of accounting that had previously been required of dealers, because "[m]ark-to-market accounting

---

[11] Section 475(a) provides (emphasis added):

> (a) GENERAL RULE.–Notwithstanding any other provision of this subpart, the following rules shall apply to securities held by a *dealer* in securities.
>
> (1) Any security which is inventory in the hands of the dealer shall be included in inventory at its fair market value.
>
> (2) In the case of any security which is not inventory in the hands of the dealer and which is held at the close of any taxable year–
>
> (A) The dealer shall recognize gain or loss as if such security were sold for its fair market value on the last business day of such taxable year, and
>
> (B) Any gain or loss shall be taken into account for such taxable year.
>
> Proper adjustment shall be made in the amount of any gain or loss subsequently realized for gain or loss taken into account under the preceding sentence. The Secretary may provide by regulations for the application of this paragraph at times other than the times provided in this paragraph.

generally provides a clear reflection of income with respect to assets that are traded in established markets." *Id.* at 445 U.S.C.A.A.N. at 839. The committee report specified that the rules governing the making of the election were to be established by the Secretary of the Treasury:

> The election will be made in the time and manner prescribed by the Secretary of the Treasury and will be effective for the taxable year for which it is made and all subsequent taxable years, unless revoked with the consent of the Secretary.

*Id.* at 446 U.S.C.A.A.N. at 840.

In addition, under the House bill, the adjustments required under Code § 481[12] because of the change of accounting method attributable to the election were to be spread over a four-year period. *Ibid.* The Senate amendment followed the House bill, and was adopted by the House Conference Committee with only a few modifications, one of which affected the § 481 adjustment:

> The conferees wish to clarify that the special rule with respect to the section 481 adjustment applies only to taxpayers making the election for the taxable year which includes the date of enactment. Any elections made thereafter will be governed by rules

---

[12]Section 481(a) provides:

> (a) GENERAL RULE.–In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")--
>
> (1) If such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then
>
> (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

and procedures established by the Secretary of the Treasury.

H.R. Conf. Rep. No. 220, 105th Cong. 1st Sess. At 516 (1997), *as reprinted in* U.S.C.C.A.N. 1129 at 1328.

The election available to securities traders under the Act was codified in IRC § 475(f), which provides:

> (f) ELECTION OF MARK TO MARKET FOR TRADERS IN SECURITIES OR COMMODITIES–
>
> (1) TRADERS IN SECURITIES.--
>
> (A) IN GENERAL.–In the case of a person who is engaged in a trade or business as a trader in securities and who elects to have this paragraph apply to such trade or business–
>
> (i) such person shall recognize gain or loss on any security held in connection with such trade or business at the close of any taxable year as if such security were sold for its fair market value on the last business day of such taxable year, and
>
> (ii) any gain or loss shall be taken into account for such taxable year.
>
> Proper adjustment shall be made in the amount of any gain or loss subsequently realized for gain or loss taken into account under the preceding sentence. The Secretary may provide by regulations for the application of this subparagraph at times other than the times provided in this subparagraph.
>
> . . .
>
> (3) ELECTION.–The elections under paragraphs (1) and (2) may be made separately for each trade or business and without the consent of the Secretary. Such an election, once made, shall apply to the taxable year for which made and all subsequent taxable years unless revoked with the consent of the Secretary.

Section 475(g) provides that the Secretary of the Treasury "shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this section . . . ."

Thus, under the mark-to-market method, traders in securities are allowed to recognize

gain or loss on the year-end value of their securities through a hypothetical sale of the assets on December 31, followed by a hypothetical repurchase of the assets on January 1 of the following year (for calendar year taxpayers). 26 U.S.C. § 475(f)(1)(A)(i). The taxpayer's bases in the securities are adjusted to reflect any gain or loss relative to the securities' original purchase price, and the character of any gain or loss is converted from capital to ordinary. 26 U.S.C. § 475(d)(3)(A)(i), (f)(1)(D). The mark-to-market method was first made available to traders in securities for tax years ending after June 8, 1997.[13]

**b. <u>Revenue Procedure 99-17</u>**

In order to implement the provisions authorized by the legislation, acting under the authority of Code § 475(g), the IRS published Revenue Procedure ("Rev. Proc.") 99-17, 1997-7 I.R.B. 52, 1999-1 C.B. 503.[14] This publication provides the "exclusive procedure" for traders in securities to make an election to use the mark-to-market method of accounting under IRC § 475(f). Rev. Proc. 99-17, § 1. The Revenue Procedure explained the general purpose underlying its requirements, in § 4:

> An election under § 475 (e) or (f) determines the method of accounting that an electing taxpayer is required to use for federal income tax purposes for securities or commodities subject to the election. Thus, beginning with the first taxable year for which the election is effective (the election year) and continuing for all subsequent taxable years (unless the election is revoked with the consent of the Commissioner), a

---

[13]Section 1001(b) and of the Act states that traders in securities are eligible to make the mark-to-market election for "constructive sales" that occur after June 8, 1997. The revaluation of a taxpayer's securities at year end is a "constructive sale," meaning that traders in securities first became eligible to make the mark-to-market election for tax years ending after June 8, 1997.

[14]Formal publication of Rev. Proc. 99-17 occurred on February 16, 1999. However, its effective date was February 8, 1999, the day it was first released to the public. Rev. Proc. 99-17, § 7.

> method of accounting for securities or commodities subject to the election is impermissible for an electing taxpayer unless the method is in accordance with § 475 and the regulations thereunder. If a taxpayer described in section 3 of this revenue procedure makes an election under section 5 of this revenue procedure, and the taxpayer's method of accounting for its taxable year immediately preceding the election year is inconsistent with § 475, the taxpayer is required to change its method of accounting to comply with its election. Section 6 of this revenue procedure contains procedures for effecting this change. A taxpayer that makes a § 475(e) or (f) election but fails to change its method of accounting to comply with that election is using an impermissible method.

Because the effective date of the revenue procedure was twenty months after the date on which taxpayers first became eligible to make the election, a series of transition rules were provided to accommodate taxpayers who were at different stages of the compliance cycle at the time of the revenue procedure's release. Section 5 of Rev. Proc. 99-17 describes the different procedures for eligible taxpayers to make the election under Code § 475(f), depending, for example, on whether the taxable year of the election is a year beginning before or after January 1, 1999. Section 6 states that taxpayers who are required to change their accounting method in connection with the election must also file Form 3115 ("Application for Change in Accounting Method") with the IRS national office, along with their timely filed tax return, in order for the election to take effect. The rules are summarized in the following table:

**Mark-to-Market Method Election Procedures under Rev. Proc. 99-17**

| **Tax Years to Which Election Procedure Applies** | **Mark-to-Market Election Procedures** |
|---|---|
| Tax years ending after June 8, 1997, for which an original federal income tax return was filed before March 18, 1999.<br><br>*(Encompasses tax years that had ended, and for which a tax return had been filed at the time of the revenue procedure's release.)* | ***§ 5.01 (First Election Procedure):***<br>***(1)*** Must calculate tax on original return with application of the I.R.C. § 475 election, *OR*<br>***(2)*** otherwise demonstrate an intent to make an I.R.C. § 475 election, *and* file an amended return by June 16, 1999. |
| Other taxable years beginning before January 1, 1999, for which an original federal income tax return is filed on or after March 18, 1999.<br><br>*(Encompasses tax years that had ended, but for which a tax return had not yet been filed at the time of the revenue procedure's release.)* | ***§ 5.02 (Second Election Procedure):***<br>Must attach a statement[15] to an original timely filed tax return for the election year, *including extensions*, describing:<br>a) the election made;<br>b) the first taxable year for which the election is effective; and<br>c) if the election is made under I.R.C. § 475(f), identifying the trade or business for which the election is made. |
| Taxable years beginning on or after January 1, 1999.<br><br>*(Encompasses tax years that had not ended, and for which tax returns had not been filed at the time of the revenue procedure's release.)* | ***§ 5.03(1) (Third Election Procedure):***<br>Must file a statement on or before the original return due date for the year *preceding* the election year, *without regard to extensions*, describing:<br>a) the election made;<br>b) the first taxable year for which the election is effective; and<br>3. if the election is made under §475(f), identifying the trade or business for which the election is made. |
| All tax years. | ***§ 6.02 (Filing Requirements):***<br>Taxpayers changing their accounting method in connection with the election must file a Form 3115, "Application for Change in Accounting Method," with the IRS national office along with a timely filed tax return for elections made under the procedures described in § 5.01(2), §5.02 or § 5.03(1). |

[15]Section 5.04 of Rev. Proc. 99-17 indicates that the "statement" required by §§ 5.02 and 5.03(1) must describe the election, the year for which it is made, and the trade or business to which it applies.

**2. <u>Plaintiff failed to follow the exclusive procedure for electing use of the mark-to-market method of ccounting</u>**

A taxpayer establishes a method of accounting by filing a single tax return on which a permissible method has been used, or by filing two consecutive tax returns on which the same erroneous method has been used. Treas. Regs. §§ 1.446-1(e)(1), (e)(2)(ii)(a); *see* Rev. Rul. 90-38, 1990-1 C.B. 57. Once adopted, a method of accounting remains in effect until a taxpayer obtains the consent of the Secretary (or his delegate, the Commissioner) to change his or her method of accounting. 26 U.S.C. § 446(e); Treas. Reg. §1.446-1(e). The netting of long- and short-term capital gains and losses is a permissible method of accounting for the sale of securities. 26 U.S.C. § 1222.

At least as early as 1996, and continuing throughout the periods in issue, Mr. Marandola's regular practice in computing his taxable income on securities transactions was to net long- and short-term capital gains against long- and short-term capital losses. (Stip. ¶ 4, Stip Ex. 1 Part 1 at X-12 "Schedule D", Stip Ex. 5 Part 1 at X-6 "Schedule D", Stip Ex. 8 Part 1 at X-9 "Schedule D", Stip Ex. 11 Part 1 at X-7 "Schedule D"). Thus, Mr. Marandola had established a method of accounting for gain or loss on the sale of securities, at the very least, by the time he filed his original 1996 return. To change to the mark-to-market method of accounting, Mr. Marandola was required to request and obtain the Commissioner's consent. 26 U.S.C. § 446(e); Treas. Reg. §1.446-1(e); *Diebold, Inc. v. United States*, 891 F.2d 1579, 1583 (Fed. Cir. 1989), *cert. denied*, 498 U.S. 823 (1990).

Section 6.01 of Rev. Proc. 99-17 advises that the Commissioner's consent to a change to the mark-to-market method of accounting pursuant to a § 475(f) election is granted, if the conditions listed in § 6.01 are satisfied:

> A change in a taxpayer's method of accounting to mark-to-market accounting is a change in method of accounting to which the provisions of §§ 446 and 481 and the regulations thereunder apply. The Commissioner hereby grants consent for a taxpayer to change its method of accounting for securities or commodities, as appropriate, if the following conditions are satisfied:
>
> (1) the taxpayer is described in section 3 of this revenue procedure;
>
> (2) the taxpayer complies with the election requirements set forth in section 5 of this revenue procedure;
>
> (3) the method of accounting to which the taxpayer is changing is in accordance with its election under § 475;
>
> (4) the year of change is the election year; and
>
> (5) the taxpayer complies with the applicable requirements of this section 6.

Mr. Marandola did not make a timely valid election under § 475(f), because he did not follow the procedures outlined in Rev. Proc. 99-17. Even if any of the amended returns filed in 2000 implementing the mark-to-market method of accounting had been *timely* filed under Rev. Proc. 99-17 (they were not), none of them complied with the other requirements outlined in § 6.01 for obtaining the Commissioner's consent to change his method of accounting to the mark-to-market method. Therefore, his late "election" is invalid, and Mr. Marandola is not entitled to compute his tax liability for 1996 through 1999 as if he had made a § 475(f) election for 1997 (or any later year).

**a. Mr. Marandola failed to make a timely valid election for the 1997 tax year**

As with most individuals, Mr. Marandola is a calendar year taxpayer. His first tax year ending after June 8, 1997 was the calendar year ending December 31, 1997. Accordingly, Mr. Marandola was first eligible to make the mark-to-market election on his 1997 tax return. In computing his tax liability for 1997, Mr. Marandola followed his established method of netting

long- and short-term capital gains and losses on the sale of securities. If Mr. Marandola intended to make the mark-to-market election under § 475(f) for that year, he would have had to follow the procedure described in Rev. Proc. 99-17 § 5.01(1) or § 5.01(2). Specifically, he would have had to compute his liability using the mark-to-market method (to comply with § 5.01(1)); *or* he would have had to otherwise evidence his intent to use that method on his original 1997 tax return *and* file an amended 1997 return using the mark-to-market method, on or before June 16, 1999 (to comply with §5.01(2)). If Mr. Marandola had followed the latter procedure, he would have also had to file a Form 3115[16] with the IRS national office along with his timely filed amended return, as required by § 6.02.

It is undisputed that Mr. Marandola did none of the above. He did not compute his 1997 tax liability using the mark-to-market method, nor did he otherwise evidence his intent to use the method on his original 1997 tax return. Mr. Marandola did file an amended 1997 return on which he computed his liability using the mark-to-market method, but he filed the amended return on January 24, 2000, more than seven months after the June 16, 1999 deadline for filing amended returns that included a § 475(f) election. Furthermore, he did not file a Form 3115 with the IRS national office, or with the amended return when it was finally filed. He thus failed to make a timely valid §475(f) election for his tax year 1997.

**b. Mr. Marandola failed to make a timely valid election for the 1998 tax year**

On January 24, 2000 Mr. Marandola amended his 1998 tax return to reflect use of the mark-to-market method of accounting. If he had made a valid election for the 1997 year (he did

---

[16] IRS Form 3115 is the Application for Change in Method of Accounting. Taxpayers are allowed to change their method of accounting with the consent of the Commissioner. Form 3115 is the manner in which they obtain that consent.

not), his amended 1998 return might have represented consistent application of the mark-to-market method. However, as discussed above, Mr. Marandola did not make a proper § 475(f) election for the 1997 tax year.

Assuming that no valid election was in effect for 1997 and that Mr. Marandola intended to make an election for 1998, as the "election year," he would have been required to change his method of accounting to use the mark-to-market method in computing his 1998 taxable income. To obtain the Commissioner's consent to change his method of accounting for that year, Mr. Marandola would have had to follow the procedures set forth in Rev. Proc. 99-17.

Mr. Marandola's 1998 tax year ended on December 31, 1998 and his original 1998 return was filed after March 18, 1999 (on October 19, 1999). Therefore, the 1998 tax year fell within the scope of the second mark-to-market election procedure, described in Rev. Proc. 99-17, § 5.02. In accordance with those requirements, Mr. Marandola would have had to attach a statement to his *original* 1998 tax return, describing the election made, the year for which it was effective (1998), and the trade or business to which it applied. He would have also had to file a Form 3115 with the IRS national office along with his timely filed return, as required by § 6.02.

It is undisputed that Mr. Marandola did none of the above. He did not compute his 1998 tax liability using the mark-to-market method, and did not attach a statement or Form 3115 to his original 1998 return evidencing his intent to make a § 475(f) election. He thus failed to make a timely valid § 475(f) election for his tax year 1998.

**c. Mr. Marandola failed to make a timely valid election for the 1999 tax year**

Mr. Marandola's 1999 (calendar) tax year began on January 1, 1999. Therefore, it fell within the scope of the third election procedure, described in Rev. Proc. 99-17, § 5.03(1).

Assuming that no valid election was in effect for 1997 or 1998, and that Mr. Marandola intended to make an election for 1999, as the "election year," he would have been required to change his method of accounting to use the mark-to-market method in computing his 1999 taxable income.

To obtain the Commissioner's consent to change his method of accounting for that year, Mr. Marandola would have had to follow the procedures set forth in Rev. Proc. 99-17. To make the election under I.R.C. § 475(f) in accordance with those requirements, Mr. Marandola would have had to file a statement describing the election made, the year for which it was effective (1999), and the trade or business to which it applied, on or before the original return due date, *without regard to extensions*, for *the year immediately preceding the year of election* (1998). In other words, if Mr. Marandola wanted to make an election to use the mark-to-market method of accounting in 1999, he would have had to make the § 475(f) election on or before April 15, 1999 (the original return due date for 1998, the year immediately preceding the year of election). He would have also had to file a Form 3115 with the IRS national office on or before the original *1998* return due date, as required by § 6.02.

It is undisputed that Mr. Marandola did none of the above. On April 15, 1999, he filed a request to extend the due date for his 1998 return, but he did not attach a statement indicating that he was electing use of the mark-to-market method of accounting for the 1999 tax year. Furthermore, he did not file a Form 3115 with either his request for an extension on his 1998 return, or with his original or amended 1999 returns.[17] He thus failed to make a timely valid §

---

[17]Instead, he implemented use of the mark-to-market method by filing an amended 1999 return on November 21, 2000--just one month after he filed his original 1999 return (on October 19, 2000), and more than 19 months after the April 15, 1999 deadline for making the election had passed.

475(f) election for his tax year 1999. *See Acar v. United States*, 2006 WL 2374636 at *3 (N.D. Cal. Aug. 16, 2006 (Slip Op.)).

**B. Plaintiff Is Not Entitled to Relief Under Treasury Regulations § 301.9100**

**1. Plaintiff's request for relief under § 301.9100 is barred by the substantial variance rule**

Mr. Marandola does not contest the fact that he failed to follow the procedures required by Rev. Proc. 99-17 for making an election under § 475(f). Instead, in his brief in support of his motion for summary judgment, Mr. Marandola argues that he is entitled to relief under Treas. Reg. § 301.9100-3 ("§ 9100 relief"), which authorizes the Commissioner to grant taxpayers an extension to make late regulatory elections where certain conditions are met. This contention is barred by the substantial variance rule.

A plaintiff must have first filed a tax refund claim with the IRS before this Court can exercise jurisdiction over a suit to recover a tax alleged to have been erroneously or illegally assessed or collected. 26 U.S.C. § 7422(a). The claim filed with the IRS must "set forth in detail each ground upon which a . . . refund is claimed and facts sufficient to apprise the Commissioner [of Internal Revenue] of the exact basis thereof." Treas. Reg. § 301.6402-2(b)(1). As this Court recently explained:

"Courts have long interpreted § 7422(a) and Treasury Reg. § 301.6402(b)(1) as stating a

---

Mr. Marandola had also filed amended returns for the 1996, 1997, and 1998 tax years, on January 24, 2000. Logically, the original 1999 return should have reflected use of any accounting methods that had been used on those amended returns, because the original 1999 return was filed almost nine months after the prior years' returns were amended. Inexplicably, however, Mr. Marandola continued to use his established method of netting his long- and short-term capital gains and losses from securities transactions on his original 1999 return.

> 'substantial variance' rule which bars a taxpayer from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS." . . . "The substantial variance rule (1) gives the IRS notice as to the nature of the claim and the specific facts upon which it is predicated; (2) gives the IRS an opportunity to correct errors; and (3) limits any subsequent litigation to those grounds that the IRS had an opportunity to consider and is willing to defend." . . . .
>
> Thus, to be addressed by a court, the legal ground for a refund claim must be presented by the taxpayer to the IRS. A "legal theory not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated." . . .
>
> Furthermore, the factual foundation for a refund claim must also have been put at issue before the IRS. "The taxpayer similarly may not substantially vary at trial the factual bases raised in the refund claims presented to the IRS." . . . Thus, for this court to consider a claim for a refund of taxes, the taxpayer must first establish that it sufficiently apprised the IRS of the same grounds and facts on which the taxpayer bases its claim before this court.

*USA Choice Internet Service, LLC v. United States*, __ Fed. Cl. __, 2006 WL 3333782 at 8-9 (November 16, 2006) (citing *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000); *Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138-40 (Fed. Cir. 1983)); *Union Pac. R.R. v. United States*, 389 F.2d 437, 442 (Ct. Cl. 1968)).

Mr. Marandola's refund claims (amended returns) for all of the years in suit (1996-1999) stated only that he was reporting income "under the mark-to-market regime" and that he intended to "carry back net operating losses from 1998." (Stip. Exs; 3 Part 1 at X-2, 7 Part 1 at X-2, 10 Part 1 at X-2, 13 Part 1, at X-2). There is no indication anywhere else in the IRS administrative record that Mr. Marandola ever sought § 9100 relief before initiating the present suit, and he does not contend on brief that he did so. (Indeed, the first indication that Mr. Marandola is relying on § 301.9100-3 appears in his argument on brief.) Thus, he is precluded

under the variance doctrine from raising that issue here.[18]

**2. Alternatively, plaintiff has failed to establish that he is otherwise entitled to § 9100 relief**

Even if Mr. Marandola's contention based on Treas. Reg. § 301.9100-3 were not barred by the substantial variance rule, he does not qualify for relief under that provision. Section 301.9100-3 prescribes rules governing taxpayers' requests for extensions of time for regulatory elections, such as the election under § 475(f). Section 301.9100-3(a) states that requests for relief will be granted "when the taxpayer provides the evidence (including affidavits described in paragraph (e) of this section) to establish to the satisfaction of the Commissioner that the taxpayer acted reasonably and in good faith, and the grant of relief will not prejudice the interests of the Government." Under § 301.9100-3(e), the evidence required to establish the "good faith" and "lack of prejudice" elements to the Commissioner's satisfaction must consist, at the least, of detailed affidavits and declarations from the taxpayer (and from other parties, if appropriate),[19] and the "other information" described in § 301.9100-3(e)(4).[20] Section 301.9100-

---

[18]We note that plaintiff did not raise § 301.9100-3 of the Regulations in the complaint or in the joint preliminary status report filed in this case.

While plaintiff's principal argument on brief is based on § 301.9100-3, he also apparently contends (at page 7) that Rev. Proc. 99-17 is "arbitrary" or otherwise defective in some manner. Suffice it to say that that contention is also barred by the variance rule, since plaintiff never raised an issue before the IRS regarding the authority of the revenue procedure, in a refund claim, or in any other manner (or, for that matter, in the complaint or the joint preliminary status report).

[19]Section 301.9100-3(e)(2) states that the taxpayer's affidavit must describe–

> the events that led to the failure to make a valid regulatory election and to the discovery of the failure. When the taxpayer relied on a qualified tax professional for advice, the taxpayer's affidavit must describe the engagement and responsibilities of the professional as well as the extent to which the taxpayer relied on the professional. The affidavit must

3(e)(5) states that a request for relief under the regulation "is a request for a letter ruling."

**a. Mr. Marandola failed to establish that he acted reasonably and in good faith**

Section 301.9100-3(b)(1) provides that a taxpayer is deemed to have acted "reasonably and in good faith" if the taxpayer:

(i) Requests relief under [Treas. Reg. § 301.9100-3] before the failure to make the regulatory election is discovered by the Internal Revenue Service (IRS);

(ii) Failed to make the election because of intervening events beyond the taxpayer's control;

(iii) Failed to make the election because, after exercising reasonable diligence (taking into account the taxpayer's experience and the complexity of the return or issue), the taxpayer was unaware of the necessity for the election;

(iv) Reasonably relied on the written advice of the IRS; or

(v) Reasonably relied on a qualified tax professional, including a tax professional employed by the taxpayer, and the tax professional failed to make, or advise the taxpayer to make, the election.

Mr. Marandola argues that he acted reasonably and in good faith, as defined by Treas. Reg. § 301.9100-3(b)(1), because (he alleges) he was not personally aware of the election.[21] Mr. Marandola's contention that the four-month period provided in Rev. Proc. 99-17 to make a valid § 475(f) election for the 1997 tax year was not long enough to enable him to learn of the election

---

be accompanied by a dated declaration, signed by the taxpayer, which states: "Under penalties of perjury, I declare that I have examined this request, including accompanying documents, and, to the best of my knowledge and belief, the request contains all the relevant facts relating to the request, and such facts are true, correct, and complete."

[20]The "other information" to be provided includes a copy of the affected return, whether the return for that year is under examination or the subject of a court proceeding, when the return was required to be filed and when it was filed, and copies of all documents that refer to the election.

[21]Plaintiff contends (at page 7) that he satisfied three of the five requirements listed in § 301.9100-3(b)(1), but does not specify which three.

does not hold water.[22] After having obtained an extension of time to file his original 1997 return, the due date for that return was October 15, 1998. He thus had a period of 14 months (from August 5, 1997–the effective date of the Act that made the election available to securities traders--to October 15, 1998) in which to indicate on his timely filed 1997 return that he intended to make an election to use the mark-to-market method of accounting for that year. If he had so indicated (he did not), and then had filed a timely amended return with the required statement and Form 3115 (he did not), that procedure would have satisfied § 5.01(2) of Rev. Proc. 99-17 that was published in February of 1999.

The regulation also sets forth three criteria which disqualify taxpayers from being deemed to have acted reasonably or in good faith. For purposes of Treas. Reg. § 301.9100-3(b)--

> a taxpayer is deemed to have *not* acted reasonably and in good faith if the taxpayer--
> . . .
> (iii) uses hindsight in requesting relief. If specific facts have changed since the due date for making the election that make the election advantageous to a taxpayer, the IRS will not ordinarily grant relief. In such a case, the IRS will grant relief *only when the taxpayer provides strong proof* that the taxpayer's decision to seek relief did not involve hindsight.

Treas. Reg. § 301.9100-3(b)(iii) (emphasis added).

Mr. Marandola did not comply with any of the procedural requirements of § 301.9100-3(e) (the equivalent of a request for a letter ruling requesting § 9100 relief) to attempt to establish entitlement to that relief to the Commissioner's satisfaction.[23] In addition, Mr.

[22]As noted above at n.18, plaintiff's attempt to discredit the authority of Rev. Proc. 99-17 is barred under the variance doctrine in any event.

[23]We note, too, that none of his contentions on brief regarding his alleged "good faith" are supported by any evidence.

Marandola's facts changed between the due date for making an election for the 1997 year and the date on which he finally attempted to make that election (*i.e.*, during the 15-month period from October 15, 1998 to January 24, 2000). Mr. Marandola's 1998 and 1999 tax returns reflect that he bought and sold securities during this 15-month period, and that he sustained significant losses on those transactions. (Stip. Exs; 8 Part 1 at X-9 "Schedule D", Part 2 at X-36 "Statement 14"; 11 Part 1 at X-7 "Schedule D", Part 2 at X-17 "Statement 14"). In other words, during that period, Mr. Marandola's facts changed in a way that made the election advantageous to him–the very definition of "hindsight" in Treas. Reg. § 301.9100-3(b)(3)(iii).[24]

Where a taxpayer could use hindsight to his or her advantage through a request for permission to make a late regulatory election, Treas. Reg. § 301.9100-3(b)(3)(iii) indicates that the IRS may still grant an extension to make the election, if the taxpayer offers "strong proof" that the taxpayer's decision to seek § 9100 relief does not involve hindsight. Mr. Marandola has offered *no* proof that his decision to make a late § 475(f) election on his amended 1997 tax return was motivated by anything other than his post-filing analysis of his prior-years returns in which it was revealed that a § 475(f) election effective for 1997 or 1998 would have produced

---

[24]The advantage Mr. Marandola gained from making the § 475(f) election for 1997 a full 15 months after the election's due date is best illustrated by considering what would have happened if the net value of his stock portfolio had substantially appreciated between October 15, 1998 and January 24, 2000. It is unlikely that he would have amended his prior year returns to elect § 475(f) because use of the mark-to-market method would have required him to recognize additional *ordinary* income on the appreciated value of his investment portfolio at year end in 1998 and 1999. Instead, the net value of Mr. Marandola's stock portfolio substantially declined between October 15, 1998 and January 24, 2000. Armed with the benefit of hindsight in January 2000, Mr. Marandola could safely conclude that a § 475(f) election in 1997 would have allowed him to recognize ordinary losses on the decline of his portfolio's value at year end in 1998 and 1999. The losses could then be carried back to 1997 and 1996, significantly reducing his overall liability for the 1996 through 1999 tax years.

favorable tax results.

**b. Mr. Marandola failed to establish that the relief sought is not prejudicial to the interests of the Government**

Section 301.9100-3 of the Regulations provides that the Commissioner will grant a reasonable extension of time to make a regulatory election only when the interests of the Government will not be prejudiced by the granting of relief. Treas. Reg. § 301.9100-3(c)(1).

In addition to the general rule setting forth standards for determining when the Government's interests are prejudiced, § 301.9100-3(c)(2) contains "special rules for accounting method regulatory elections" (such as that at issue in this case). That provision specifies that the interests of the Government are deemed to be prejudiced, except in unusual and compelling circumstances, if the accounting method regulatory election for which relief is requested:

(i) Is subject to the procedure described in [Treas. Reg.] § 1.446-1(e)(3)(i). . . (requiring the advance written consent of the Commissioner);

(ii) Requires an adjustment under IRC § 481(a) (or would require an adjustment under § 481(a) if the taxpayer changed to the method of accounting for which relief is requested in a taxable year subsequent to the taxable year the election should have been made);

(iii) Would permit a change from an impermissible method of accounting that is an issue under consideration by examination, an appeals office, or a federal court and the change would provide a more favorable method or more favorable terms and conditions than if the change were made as part of an examination; or

(iv) Provides a more favorable method of accounting or more favorable terms and conditions if the election is made by a certain date or taxable year.

Revenue Procedure 99-17 implicates several of the above criteria for which the Government's interests are deemed to be prejudiced by the granting of § 9100 relief. An

election under § 475(f) is a method of accounting, the use of which requires the consent of the Commissioner. Rev. Proc. 99-17 § 2.03. To obtain this consent, a Form 3115, "Application for Change in Accounting Method," generally must be filed during the taxable year in which the taxpayer desires to make the change in method of accounting. *Id.* In computing taxable income, § 481(a) requires a taxpayer to take into account those adjustments necessary to prevent amounts from being duplicated or omitted when the taxpayer's taxable income is computed under a method of accounting different from the method used to compute taxable income for the preceding taxable year. Rev. Proc. 99-17 § 2.04. For taxpayers changing to the mark-to-market method of accounting, the net amount of adjustments required to be taken into account under § 481 should be spread over the four year period beginning with the tax year that includes August 5, 1997. Rev. Proc. 99-17 § 2.05.

As indicated by the language of Rev. Proc. 99-17, the election under § 475(f) requires the consent of the Commissioner, *and* an adjustment under IRC § 481(a). These two characteristics are specifically identified in Treas. Reg. § 301.9100-3(c)(2)(i) and (ii) as criteria for which the granting of § 9100 relief is deemed to be prejudicial to the interests of the Government. Furthermore, Mr. Marandola stands to benefit most from application of the mark-to-market method of accounting in 1998 because that is the year in which the method's application would have produced significant NOL's. Granting § 9100 relief to allow Mr. Marandola to make a § 475(f) election on or before any date that allows him to use the method for his 1998 tax year provides him with more favorable terms and conditions than if he were to make the election in subsequent tax years. Thus, Mr. Marandola is seeking to change his method by a certain date or for a certain tax year to take advantage of the more favorable terms and conditions the method

will produce than if it is adopted at a later date. This result falls squarely within the definition of relief that is deemed to be prejudicial to the Government's interests under Treas. Reg. § 301.9100-3(c)(2)(iv).

### c. <u>Denial of § 9100 relief is consistent with *Vines v. Commissioner*; *Vines* does not support plaintiff</u>

In support of his argument, Mr. Marandola cites *Vines v. Commissioner*, a recent United States Tax Court decision in which a taxpayer was granted § 9100 relief to make a late § 475(f) election. *Vines v. Commissioner*, 126 T.C. 279 (2006), 2006 WL 11280960. In *Vines*, the taxpayer first learned that he could use the mark-to-market method of accounting for his 2000 tax year three months after the deadline for making the election had passed, and had been in business as a securities trader for only three months when the deadline passed. 2006 WL 11280960 at 4, 7. Upon learning of the election and as soon as practically possible, the taxpayer filed a request for a private letter ruling seeking § 9100 relief to make a late § 475(f) election. The IRS issued an adverse ruling to the taxpayer.

In deciding that the IRS had abused its discretion in denying § 9100 relief, the Tax Court was influenced by, *inter alia*, the fact that the taxpayer "did not realize any gains or suffer any further losses between the time he should have filed his section 475(f) election and the date he actually filed the election." *Id.*, at 11. That is, in the Tax Court's view, the taxpayer's situation came within the literal language of Treas. Reg. § 301.9100 that "no facts had changed since the due date for making the election that made the election advantageous to the taxpayer."

As the district court pointed out in *Acar v. United States*, *supra*, the *Vines* court viewed the facts in that case as being "in marked contrast" with those in *Lehrer v. Commissioner*, T.C.

Memo. 2005-167 (2005), observing:

> The taxpayers in *Lehrer* are the classic example of taxpayers who seek to use the benefit of hindsight. The taxpayers sought retroactively to convert their capital losses into ordinary losses several years later, with continued trading in the interim, in order to escape a deficiency and a section 6662 accuracy-related penalty.

*Vines*, 2006 WL 11280960 at 9; *see Acar*, 2005 WL 2374636 at *4.

In *Acar*, the taxpayer attempted to make a § 475(f) election three years too late, when he realized that he could write off losses on the tax return he was preparing if he made the election for the earlier year. The district court, noting the similarity to *Lehrer*, concluded:

> In other words, plaintiff learned after the fact that he could apply a mark to market election to treat his prior (and continuing) losses as ordinary losses, rather than having his losses capped at the standard limits applicable to capital losses. As in *Lehrer*, this seems the classic definition of "hindsight."
>
> Moreover, as defendant points out, plaintiff has not at any rate submitted any facts establishing that he would fall in one of the five subcategories listed under [Treas. Reg.] § 301.9100-3 as presumptive evidence of good faith. He claims only that he is ignorant of the law and does not have the expertise needed to have discovered the need to file his election in a more timely manner. . . . He submits no evidence of reliance on a third party tax professional, of reliance on the IRS, or of reasonable diligence in attempting to discover what the law was, and offers no evidence of intervening events outside his control that could excuse his late filing. Ignorance of the tax laws, standing alone, is insufficient to warrant the grant of a retroactive extension of time pursuant to [Treas. Reg.] § 301.9100-3.

*Id.* at *5. The district court, "consistent with *Vines* and *Lehrer*," held that the taxpayer had failed to establish that he was entitled to § 9100 relief. *Ibid.*

As in *Acar* and *Lehrer*, Mr. Marandola has not demonstrated that he acted reasonably and in good faith, or that § 9100 relief would not result in prejudice to the interests of the Government. Rather, he simply learned after the fact that he could apply a mark-to-market

election to treat his prior losses as ordinary losses, a more advantageous treatment to him as a taxpayer–*i.e.*, the classic definition of "hindsight."

**CONCLUSION**

For the reasons stated herein, defendant is entitled to judgment as a matter of law, and the complaint should be dismissed with prejudice, with costs assessed against the plaintiff.

Respectfully submitted,

s/ Jeffrey R. Malo
JEFFREY R. MALO
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6507

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief

December 15, 2006
Date

s/ Mary M. Abate
Of Counsel

Attorneys for Defendant