# APPENDIX A

**Internal Revenue Code of 1986 (26 U.S.C.) as of 1997:**

## SEC. 446. GENERAL RULE FOR METHODS OF ACCOUNTING..

**(a) General rule.**--Taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books.

**(b) Exceptions.**--If no method of accounting has been regularly used by the taxpayer, or if the method used does not clearly reflect income, the computation of taxable income shall be made under such method as, in the opinion of the Secretary, does clearly reflect income.

**(c) Permissible methods.**--Subject to the provisions of subsections (a) and (b), a taxpayer may compute taxable income under any of the following methods of accounting–

**(1)** the cash receipts and disbursements method;

**(2)** an accrual method;

**(3)** any other method permitted by this chapter; or

**(4)** any combination of the foregoing methods permitted under regulations prescribed by the Secretary.

**(d) Taxpayer engaged in more than one business.**--A taxpayer engaged in more than one trade or business may, in computing taxable income, use a different method of accounting for each trade or business.

**(e) Requirement respecting change of accounting method.**--Except as otherwise expressly provided in this chapter, a taxpayer who changes the method of accounting on the basis of which he regularly computes his income in keeping his books shall, before computing his taxable income under the new method, secure the consent of the Secretary.

**(f) Failure to request change of method of accounting.**--If the taxpayer does not file with the Secretary a request to change the method of accounting, the absence of the consent of the Secretary to a change in the method of accounting shall not be taken into account–

**(1)** to prevent the imposition of any penalty, or the addition of any amount to tax, under this title, or

**(2)** to diminish the amount of such penalty or addition to tax.

## SEC. 475. MARK TO MARKET ACCOUNTING METHOD FOR DEALERS IN SECURITIES.

**(a) General rule.**--Notwithstanding any other provision of this subpart, the following rules shall apply to securities held by a dealer in securities:

**(1)** Any security which is inventory in the hands of the dealer shall be included in inventory at its fair market value.

**(2)** In the case of any security which is not inventory in the hands of the dealer and which is held at the close of any taxable year–

**(A)** the dealer shall recognize gain or loss as if such security were sold for its fair market value on the last business day of such taxable year, and

**(B)** any gain or loss shall be taken into account for such taxable year.

Proper adjustment shall be made in the amount of any gain or loss subsequently realized for gain or loss taken into account under the preceding sentence. The Secretary may provide by regulations for the application of this paragraph at times other than the times provided in this paragraph.

**(b) Exceptions.--**

**(1) In general.**--Subsection (a) shall not apply to--

**(A)** any security held for investment,

**(B)** (i) any security described in subsection (c)(2)(C) which is acquired (including originated) by the taxpayer in the ordinary course of a trade or business of the taxpayer and which is not held for sale, and (ii) any obligation to acquire a security described in clause (i) if such obligation is entered into in the ordinary course of such trade or business and is not held for sale, and

**(C)** any security which is a hedge with respect to–

**(i)** a security to which subsection (a) does not apply, or

**(ii)** a position, right to income, or a liability which is not a security in the hands of the taxpayer.

To the extent provided in regulations, subparagraph (C) shall not apply to any security held by a person in its capacity as a dealer in securities.

**(2) Identification required.**--A security shall not be treated as described in subparagraph (A), (B), or (C) of paragraph (1), as the case may be, unless such security is clearly identified in the dealer's records as being described in such subparagraph before the close of the day on which it was acquired, originated, or entered into (or such other time as the Secretary may by regulations prescribe).

**(3) Securities subsequently not exempt.**--If a security ceases to be described in paragraph (1) at any time after it was identified as such under paragraph (2), subsection (a) shall apply to any changes in value of the security occurring after the cessation.

**(4) Special rule for property held for investment.**--To the extent provided in regulations, subparagraph (A) of paragraph (1) shall not apply to any security described in subparagraph (D) or (E) of subsection (c)(2) which is held by a dealer in such securities.

**(c) Definitions.--**For purposes of this section–

**(1) Dealer in securities defined.--**The term "dealer in securities" means a taxpayer who–

**(A)** regularly purchases securities from or sells securities to customers in the ordinary course of a trade or business; or

**(B)** regularly offers to enter into, assume, offset, assign or otherwise terminate positions in securities with customers in the ordinary course of a trade or business.

**(2) Security defined.**--The term "security" means any--

**(A)** share of stock in a corporation;

**(B)** partnership or beneficial ownership interest in a widely held or publicly traded partnership or trust;

**(C)** note, bond, debenture, or other evidence of indebtedness;

**(D)** interest rate, currency, or equity notional principal contract;

**(E)** evidence of an interest in, or a derivative financial instrument in, any security described in subparagraph (A), (B), (C), or (D), or any currency, including any option, forward contract, short position, and any similar financial instrument in such a security or currency; and

**(F)** position which--

**(i)** is not a security described in subparagraph (A), (B), (C), (D), or (E),

**(ii)** is a hedge with respect to such a security, and

**(iii)** is clearly identified in the dealer's records as being described in this subparagraph before the close of the day on which it was acquired or entered into (or such other time as the Secretary may by regulations prescribe).

Subparagraph (E) shall not include any contract to which section 1256(a) applies.

**(3) Hedge.**--The term "hedge" means any position which manages the dealer's risk of interest rate or price changes or currency fluctuations, including any position which is reasonably expected to become a hedge within 60 days after the acquisition of the position.

**(4) Special rules for certain receivables.--**

**(A) In general.**--Paragraph (2)(C) shall not include any nonfinancial customer paper.

**(B) Nonfinancial customer paper.**--For purposes of subparagraph (A), the term "nonfinancial customer paper" means any receivable which--

**(i)** is a note, bond, debenture, or other evidence of indebtedness;

**(ii)** arises out of the sale of nonfinancial goods or services by a person the principal activity of which is the selling or providing of nonfinancial goods or services; and

**(iii)** is held by such person (or a person who bears a relationship to such person described in section 267(b) or 707(b)) at all times since issue.

**(d) Special rules.**--For purposes of this section--

**(1) Coordination with certain rules.**--The rules of sections 263(g), 263A, and 1256(a) shall not apply to securities to which subsection (a) applies, and section 1091 shall not apply (and section 1092 shall apply) to any loss recognized under subsection (a).

**(2) Improper identification.**--If a taxpayer--

**(A)** identifies any security under subsection (b)(2) as being described in subsection (b)(1) and such security is not so described, or

**(B)** fails under subsection (c)(2)(F)(iii) to identify any position which is described in subsection (c)(2)(F) (without regard to clause (iii) thereof) at the

time

such identification is required, the provisions of subsection (a) shall apply to such security or position, except that any loss under this section prior to the disposition of the security or position shall be recognized only to the extent of gain previously recognized under this section (and not previously taken into account under this paragraph) with respect to such security or position.

**(3) Character of gain or loss.--**

**(A) In general.**--Except as provided in subparagraph (B) or section1236(b)--

**(i) In general.**--Any gain or loss with respect to a security under subsection (a)(2) shall be treated as ordinary income or loss.

**(ii) Special rule for dispositions.**--If--

**(I)** gain or loss is recognized with respect to a security before the close of the taxable year, and

**(II)** subsection (a)(2) would have applied if the security were held as of the close of the taxable year, such gain or loss shall be treated as ordinary income or loss.

**(B) Exception.**--Subparagraph (A) shall not apply to any gain or loss which is allocable to a period during which--

**(i)** the security is described in subsection (b)(1)(C) (without regard to subsection (b)(2)),

**(ii)** the security is held by a person other than in connection with its

activities as a dealer in securities, or

**(iii)** the security is improperly identified (within the meaning of subparagraph (A) or (B) of paragraph (2)).

**(e) Election of mark to market for dealers in commodities.--**

**(1) In general.**--In the case of a dealer in commodities who elects the application of this subsection, this section shall apply to commodities held by such dealer in the same manner as this section applies to securities held by a dealer in securities.

**(2) Commodity.**--For purposes of this subsection and subsection (f), the term "commodity" means--

**(A)** any commodity which is actively traded (within the meaning of section 1092(d)(1));

**(B)** any notional principal contract with respect to any commodity described in subparagraph (A);

**(C)** any evidence of an interest in, or a derivative instrument in, any commodity described in subparagraph (A) or (B), including any option, forward contract, futures contract, short position, and any similar instrument in such a commodity; and

**(D)** any position which–

**(i)** is not a commodity described in subparagraph (A), (B), or (C),

**(ii)** is a hedge with respect to such a commodity, and

**(iii)** is clearly identified in the taxpayer's records as being described

in this subparagraph before the close of the day on which it was acquired or entered into (or such other time as the Secretary may by regulations prescribe).

**(3) Election.**--An election under this subsection may be made without the consent of the Secretary. Such an election, once made, shall apply to the taxable year for which made and all subsequent taxable years unless revoked with the consent of the Secretary.

**(f) Election of mark to market for traders in securities or commodities.--**

**(1) Traders in securities.--**

**(A) In general.**--In the case of a person who is engaged in a trade or business as a trader in securities and who elects to have this paragraph apply to such trade or business--

**(i)** such person shall recognize gain or loss on any security held in connection with such trade or business at the close of any taxable year as if such security were sold for its fair market value on the last business day of such taxable year, and

**(ii)** any gain or loss shall be taken into account for such taxable year. Proper adjustment shall be made in the amount of any gain or loss subsequently realized for gain or loss taken into account under the preceding sentence. The Secretary may provide by regulations for the application of this subparagraph at times other than the times provided in this subparagraph.

**(B) Exception**.--Subparagraph (A) shall not apply to any security--

**(i)** which is established to the satisfaction of the Secretary as having no connection to the activities of such person as a trader, and

**(ii)** which is clearly identified in such person's records as being described in clause (i) before the close of the day on which it was acquired, originated, or entered into (or such other time as the Secretary may by regulations prescribe). If a security ceases to be described in clause (i) at any time after it was identified as such under clause (ii), subparagraph (A) shall apply to any changes in value of the security occurring after the cessation.

**(C) Coordination with section 1259.**--Any security to which subparagraph (A) applies and which was acquired in the normal course of the taxpayer's activities as a trader in securities shall not be taken into account in applying section 1259 to any position to which subparagraph (A) does not apply.

**(D) Other rules to apply.**--Rules similar to the rules of subsections (b)(4) and (d) shall apply to securities held by a person in any trade or business with respect to which an election under this paragraph is in effect. Subsection (d)(3) shall not apply under the preceding sentence for purposes of applying sections 1402 and 7704.

**(2) Traders in commodities.**--In the case of a person who is engaged in a trade or business as a trader in commodities and who elects to have this paragraph apply to such trade or business, paragraph (1) shall apply to commodities held by such trader in connection with such trade or business in the same manner as paragraph (1) applies to securities held by a trader in securities.

**(3) Election.**--The elections under paragraphs (1) and (2) may be made separately for each trade or business and without the consent of the Secretary. Such an election, once made, shall apply to the taxable year for which made and all subsequent taxable years unless revoked with the consent of the Secretary.

**(g) Regulatory authority.**--The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this section, including rules–

**(1)** to prevent the use of year-end transfers, related parties, or other arrangements to avoid the provisions of this section,

**(2)** to provide for the application of this section to any security which is a hedge which cannot be identified with a specific security, position, right to income, or liability, and

**(3)** to prevent the use by taxpayers of subsection (c)(4) to avoid the application of this section to a receivable that is inventory in the hands of the taxpayer (or a person who bears a relationship to the taxpayer described in section 267(b) or 707(b)).

**SEC. 481(a) ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING**

**(a) General rule.**--In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change")--

**(1)** if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then

**(2)** there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.

*** * * * ***

**SEC. 1222. OTHER TERMS RELATING TO CAPITAL GAINS AND LOSSES.**
For purposes of this subtitle--

**(1)** Short-term capital gain.--The term "short-term capital gain" means gain from the sale or exchange of a capital asset held for not more than 1 year, if and to the extent such gain is taken into account in computing gross income.

**(2) Short-term capital loss.**--The term "short-term capital loss" means loss from the sale or exchange of a capital asset held for not more than 1 year, if and to the extent that such loss is taken into account in computing taxable income.

**(3) Long-term capital gain.**--The term "long-term capital gain" means gain from the sale or exchange of a capital asset held for more than 1 year, if and to the extent such gain is taken into account in computing gross income.

**(4) Long-term capital loss.**--The term "long-term capital loss" means loss from the sale or exchange of a capital asset held for more than 1 year, if and to the extent that such loss is taken into account in computing taxable income.

**(5) Net short-term capital gain.**--The term "net short-term capital gain" means the excess of short-term capital gains for the taxable year over the short-term capital losses for such year.

**(6) Net short-term capital loss.**--The term "net short-term capital loss" means the excess of short-term capital losses for the taxable year over the short-term capital gains for such year.

**(7) Net long-term capital gain.**--The term "net long-term capital gain" means the excess of long-term capital gains for the taxable year over the long-term capital losses for such year.

**(8) Net long-term capital loss.**--The term "net long-term capital loss" means the excess of long-term capital losses for the taxable year over the long-term capital gains for such year.

**(9) Capital gain net income.**--The term "capital gain net income" means the excess of the gains from sales or exchanges of capital assets over the losses from such sales or exchanges.

**(10) Net capital loss.**--The term "net capital loss" means the excess of the losses from sales or exchanges of capital assets over the sum allowed under section 1211. In the case of a corporation, for the purpose of determining losses under this paragraph, amounts which are short-term capital losses under section 1212 shall be excluded.

**(11) Net capital gain.**--The term "net capital gain" means the excess of the net long-term capital gain for the taxable year over the net short-term capital loss for such year.

For purposes of this subtitle, in the case of futures transactions in any commodity subject to the rules of a board of trade or commodity exchange, the length of the holding period taken into account under this section or under any other section amended by section 1402 of the Tax Reform Act of 1976 shall be determined without regard to the amendments made by subsections (a) and (b) of such section 1402.

**SEC. 6511(a)-(c). LIMITATIONS ON CREDIT OR REFUND. AS OF (2000).**

**(a) Period of limitation on filing claim.**--Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the

time the tax was paid, whichever of such periods expires the later, or if no return was filed by the taxpayer, within 2 years from the time the tax was paid. Claim for credit or refund of an overpayment of any tax imposed by this title which is required to be paid by means of a stamp shall be filed by the taxpayer within 3 years from the time the tax was paid.

**(b) Limitation on allowance of credits and refunds.--**

**(1) Filing of claim within prescribed period.**--No credit or refund shall be allowed or made after the expiration of the period of limitation prescribed in subsection

(a) for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period.

**(2) Limit on amount of credit or refund.--**

**(A) Limit where claim filed within 3-year period.**--If the claim was filed

by the taxpayer during the 3-year period prescribed in subsection (a), the amount of the credit or refund shall not exceed the portion of the tax paid within the period, immediately preceding the filing of the claim, equal to 3 years plus the period of any extension of time for filing the return. If the tax was required to be paid by means of a stamp, the amount of the credit or refund shall not exceed the portion of the tax paid within the 3 years immediately preceding the filing of the claim.

**(B) Limit where claim not filed within 3-year period.**--If the claim was not filed within such 3-year period, the amount of the credit or refund shall not exceed the portion of the tax paid during the 2 years immediately preceding the filing of the claim.

**(C) Limit if no claim filed.**--If no claim was filed, the credit or refund shall not exceed the amount which would be allowable under subparagraph (A) or (B), as the case may be, if claim was filed on the date the credit or refund is allowed.

**(c)** Special rules applicable in case of extension of time by agreement.--If an agreement under the provisions of section 6501(c)(4) extending the period for assessment of a tax imposed by this title is made within the period prescribed in subsection (a) for the filing of a claim for credit or refund--

**(1) Time for filing claim.**--The period for filing claim for credit or refund or for making credit or refund if no claim is filed, provided in subsections (a) and (b)(1), shall not expire prior to 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement or any extension thereof under section 6501(c)(4).

**(2) Limit on amount.--**If a claim is filed, or a credit or refund is allowed when no claim was filed, after the execution of the agreement and within 6 months after the expiration of the period within which an assessment may be made pursuant to the

agreement or any extension thereof, the amount of the credit or refund shall not exceed the portion of the tax paid after the execution of the agreement and before the filing of the claim or the making of the credit or refund, as the case may be, plus the portion of the tax paid within the period which would be applicable under subsection (b)(2) if a claim had been filed on the date the agreement was executed.

**(3) Claims not subject to special rule.**--This subsection shall not apply in the case of a claim filed, or credit or refund allowed if no claim is filed, either–

**(A)** prior to the execution of the agreement or

**(B)** more than 6 months after the expiration of the period within which an assessment may be made pursuant to the agreement or any extension thereof.

* * * * *

**SEC. 7422. CIVIL ACTIONS FOR REFUND.**

**(a) No suit prior to filing claim for refund.**--No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary, according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

**(b) Protest or duress.**--Such suit or proceeding may be maintained whether or not such tax, penalty, or sum has been paid under protest or duress.

**(c) Suits against collection officer a bar.**--A suit against any officer or employee of the United States (or former officer or employee) or his personal representative for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected shall be treated as if the United States had been a party to such suit in applying the doctrine of res judicata in all suits in respect of any internal revenue tax, and in all proceedings in the Tax Court and on review of decisions of the Tax Court.

**(d) Credit treated as payment.**--The credit of an overpayment of any tax in satisfaction of any tax liability shall, for the purpose of any suit for refund of such tax liability so satisfied, be deemed to be a payment in respect of such tax liability at the time such credit is allowed.

**(e) Stay of proceedings.**--If the Secretary prior to the hearing of a suit brought by a

taxpayer in a district court or the United States Claims Court for the recovery of any income tax, estate tax, gift tax, or tax imposed by chapter 41, 42, 43, or 44 (or any penalty relating to such taxes) mails to the taxpayer a notice that a deficiency has been determined in respect of the tax which is the subject matter of taxpayer's suit, the proceedings in taxpayer's suit shall be stayed during the period of time in which the taxpayer may file a petition with the Tax Court for a redetermination of the asserted deficiency, and for 60 days thereafter. If the taxpayer files a petition with the Tax Court, the district court or the United States Claims Court, as the case may be, shall lose jurisdiction of taxpayer's suit to whatever extent jurisdiction is acquired by the Tax Court of the subject matter of taxpayer's suit for refund. If the taxpayer does not file a petition with the Tax Court for a redetermination of the asserted deficiency, the United States may counterclaim in the taxpayer's suit, or intervene in the event of a suit as described in subsection (c) (relating to suits against officers or employees of the United States), within the period of the stay of proceedings notwithstanding that the time for such pleading may have otherwise expired. The taxpayer shall have the burden of proof with respect to the issues raised by such counterclaim or intervention of the United States except as to the issue of whether the taxpayer has been guilty of fraud with intent to evade tax. This subsection shall not apply to a suit by a taxpayer which, prior to the date of enactment of this title, is commenced, instituted, or pending in a district court or the United States Claims Court for the recovery of any income tax, estate tax, or gift tax (or any penalty relating to such taxes).

**(f) Limitation on right of action for refund.--**

**(1) General rule.**--A suit or proceeding referred to in subsection (a) may be maintained only against the United States and not against any officer or employee of the United States (or former officer or employee) or his personal representative. Such suit or proceeding may be maintained against the United States notwithstanding the provisions of section 2502 of title 28 of the United States Code (relating to aliens' privilege to sue) and notwithstanding the provisions of section 1502 of such title 28 (relating to certain treaty cases).

**(2) Misjoinder and change of venue.**--If a suit or proceeding brought in a United States district court against an officer or employee of the United States (or former officer or employee) or his personal representative is improperly brought solely by virtue of paragraph (1), the court shall order, upon such terms as are just, that the pleadings be amended to substitute the United States as a party for such officer or employee as of the time such action commenced, upon proper service of process on the United States. Such suit or proceeding shall upon request by the United States be transferred to the district or division where it should have been brought if such action initially had been brought against the United States.

**(g) Special rules for certain excise taxes imposed by chapter 42 or 43.--**

**(1) Right to bring actions.--**

**(A) In general.--**With respect to any taxable event, payment of the full amount of the first tier tax shall constitute sufficient payment in order to maintain an action under this section with respect to the second tier tax.

**(B) Definitions.**--For purposes of subparagraph (A), the terms "taxable event", "first tier tax", and "second tier tax" have the respective meanings given to such terms by section 4963.

**(2) Limitation on suit for refund.**--No suit may be maintained under this section for the credit or refund of any tax imposed under section 4941, 4942, 4943, 4944, 4945, 4951, 4952, 4955, 4958, 4971, or 4975 with respect to any act (or failure to act) giving rise to liability for tax under such sections, unless no other suit has been maintained for credit or refund of, and no petition has been filed in the Tax Court with respect to a deficiency in, any other tax imposed by such sections with respect to such act (or failure to act).

**(3) Final determination of issues.--**For purposes of this section, any suit for the credit or refund of any tax imposed under section 4941, 4942, 4943, 4944, 4945, 4951, 4952, 4955, 4958, 4971, or 4975 with respect to any act (or failure to act) giving rise to liability for tax under such sections, shall constitute a suit to determine all questions with respect to any other tax imposed with respect to such act (or failure to act) under such sections, and failure by the parties to such suit to bring any such question before the Court shall constitute a bar to such question.

**(h) Special rule for actions with respect to partnership items.**--No action may be brought for a refund attributable to partnership items (as defined in section 6231(a)(3)) except as provided in section 6228(b) or section 6230(c).

**(i) Special rule for actions with respect to tax shelter promoter and understatement penalties.**--No action or proceeding may be brought in the United States Claims Court for any refund or credit of a penalty imposed by section 6700 (relating to penalty for promoting abusive tax shelters, etc.) or section 6701 (relating to penalties for aiding and abetting understatement of tax liability).

**(j) Special rule for actions with respect to estates for which an election under section 6166 is made.**--

**(1) In general.**--The district courts of the United States and the United States Court of Federal Claims shall not fail to have jurisdiction over any action brought by the representative of an estate to which this subsection applies to determine the correct amount of the estate tax liability of such estate (or for any refund with respect thereto) solely because the full amount of such liability has not been paid by reason of an election under section 6166 with respect to such estate.

**(2) Estates to which subsection applies.**--This subsection shall apply to any estate if, as of the date the action is filed–

**(A)** no portion of the installments payable under section 6166 have been accelerated;

**(B)** all such installments the due date for which is on or before the date the action is filed have been paid;

**(C)** there is no case pending in the Tax Court with respect to the tax imposed by section 2001 on the estate and, if a notice of deficiency under section 6212 with respect to such tax has been issued, the time for filing a petition with the Tax Court with respect to such notice has expired; and

**(D)** no proceeding for declaratory judgment under section 7479 is pending.

**(3) Prohibition on collection of disallowed liability.**--If the court redetermines under paragraph (1) the estate tax liability of an estate, no part of such liability which is disallowed by a decision of such court which has become final may be collected by the Secretary, and amounts paid in excess of the installments determined by the court as currently due and payable shall be refunded.

**(k) Cross references.--**

**(1)** For provisions relating generally to claims for refund or credit, see chapter 65 (relating to abatements, credit, and refund) and chapter 66 (relating to limitations).

**(2)** For duty of United States attorneys to defend suits, see section 507 of Title 28 of the United States Code.

**(3)** For jurisdiction of United States district courts, see section 1346 of Title 28 of the United States Code.

**(4)** For payment by the Treasury of judgments against internal revenue officers or employees, upon certificate of probable cause, see section 2006 of Title 28 of the United States Code.

**Treasury Regulations (26 C.F.R.):**

**SEC. 1.446-1. GENERAL RULE OF METHODS OF ACCOUNTING.**

**(a) General rule.**

**(1)** Provides that taxable income shall be computed under the method of accounting on the basis of which a taxpayer regularly computes his income in keeping his books. The term "method of accounting" includes not only the overall method of accounting of the taxpayer but also the accounting treatment of any item. Examples of such over-all methods are the cash receipts and disbursements method, an accrual method, combinations of such methods, and combinations of the foregoing with various methods provided for the accounting treatment of special items. These methods of accounting for special items include the accounting treatment prescribed for research and experimental expenditures, soil and water conservation expenditures, depreciation, net operating losses, etc. Except for deviations permitted or required by such special accounting treatment, taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books. For requirement respecting the adoption or change of accounting method, see section 446(e) and paragraph (e) of this section.

**(2)** It is recognized that no uniform method of accounting can be prescribed for all taxpayers. Each taxpayer shall adopt such forms and systems as are, in his judgment, best suited to his needs. However, no method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income. A method of accounting which reflects the consistent application of generally accepted accounting principles in a particular trade or business in accordance with accepted conditions or practices in that trade or business will ordinarily be regarded as clearly reflecting income, provided all items of gross income and expense are treated consistently from year to year.

**(3)** Items of gross income and expenditures which are elements in the computation of taxable income need not be in the form of cash. It is sufficient that such items can be valued in terms of money. For general rules relating to the taxable year for inclusion of income and for taking deductions, see sections 451 and 461, and the regulations thereunder.

**(4)** Each taxpayer is required to make a return of his taxable income for each taxable year and must maintain such accounting records as will enable him to file a correct return. See section 6001 and the regulations thereunder. Accounting records include the taxpayer's regular books of account and such other records and data as may

be necessary to support the entries on his books of account and on his return, as for example,

a reconciliation of any differences between such books and his return. The following are among the essential features that must be considered in maintaining such records:

**(i)** In all cases in which the production, purchase, or sale of merchandise of any kind is an income-producing factor, merchandise on hand (including finished goods, work in process, raw materials, and supplies) at the beginning and end of the year shall be taken into account in computing the taxable income of the year. (For rules relating to computation of inventories, see sections 263A, 471, and 472, and the regulations thereunder.)

**(ii)** Expenditures made during the year shall be properly classified as between capital and expense. For example, expenditures for such items as plant and equipment, which have a useful life extending substantially beyond the taxable year, shall be charged to a capital account and not to an expense account.

**(iii)** In any case in which there is allowable with respect to an asset a deduction for depreciation, amortization, or depletion, any expenditures (other than ordinary repairs) made to restore the asset or prolong its useful life shall be added to the asset account or charged against the appropriate reserve.

**(b) Exceptions.**

**(1)** If the taxpayer does not regularly employ a method of accounting which clearly reflects his income, the computation of taxable income shall be made in a manner which, in the opinion of the Commissioner, does clearly reflect income.

**(2)** A taxpayer whose sole source of income is wages need not keep formal books in order to have an accounting method. Tax returns, copies thereof, or other records may be sufficient to establish the use of the method of accounting used in the preparation of the taxpayer's income tax returns.

**(c) Permissible methods--**

**(1)** In general. Subject to the provisions of paragraphs (a) and (b) of this section, a taxpayer may compute his taxable income under any of the following methods of accounting:

**(i) Cash receipts and disbursements method.** Generally, under the cash receipts and disbursements method in the computation of taxable income, all items which constitute gross income (whether in the form of cash, property, or services) are to be included for the taxable year in which actually or constructively received. Expenditures are to be deducted for the taxable year in which actually made. For rules relating to constructive receipt, see § 1.451-2. For

treatment of an expenditure attributable to more than one taxable year, see section 461(a) and paragraph (a)(1) of § 1.461-1.

**(ii) Accrual method.**

**(A)** Generally, under an accrual method, income is to be included for the taxable year when all the events have occurred that fix the right to receive the income and the amount of the income can be determined with reasonable accuracy. Under such a method, a liability is incurred, and generally is taken into account for Federal income tax purposes, in the taxable year in which all the events have occurred that establish the fact of the liability, the amount of the liability can be determined with reasonable accuracy, and economic performance has occurred with respect to the liability. (See paragraph (a)(2)(iii)(A) of § 1.461-1 for examples of liabilities that may not be taken into account until after the taxable year incurred, and see §§ 1.461-4 through 1.461-6 for rules relating to economic performance.) Applicable provisions of the Code, the Income Tax Regulations, and other guidance published by the Secretary prescribe the manner in which a liability that has been incurred is taken into account. For example, section 162 provides that a deductible liability generally is taken into account in the taxable year incurred through a deduction from gross income. As a further example, under section 263 or 263A, a liability that relates to the creation of an asset having a useful life extending substantially beyond the close of the taxable year is taken into account in the taxable year incurred through capitalization (within the meaning of § 1.263A-1(c)(3)) and may later affect the computation of taxable income through depreciation or otherwise over a period including subsequent taxable years, in accordance with applicable Internal Revenue Code sections and related guidance.

**(B)** The term "liability" includes any item allowable as a deduction, cost, or expense for Federal income tax purposes. In addition to allowable deductions, the term includes any amount otherwise allowable as a capitalized cost, as a cost taken into account in computing cost of goods sold, as a cost allocable to a long-term contract, or as any other cost or expense. Thus, for example, an amount that a taxpayer expends or will expend for capital improvements to property must be incurred before the taxpayer may take the amount into account in computing its basis in the property. The term "liability" is not limited to items for which a legal obligation to pay exists at the time of payment. Thus, for example, amounts prepaid for goods or services and amounts paid without a legal obligation to do so may not be taken into account by an accrual basis taxpayer any earlier than the taxable year in which those amounts are incurred.

**(C)** No method of accounting is acceptable unless, in the opinion of the Commissioner, it clearly reflects income. The method used by the taxpayer in determining when income is to be accounted for will generally be acceptable if it accords with generally accepted accounting principles, is consistently used by the taxpayer from year to year, and is consistent with the Income Tax Regulations. For example, a taxpayer engaged in a manufacturing business may account for sales of the taxpayer's product when the goods are shipped, when the product is delivered or accepted, or when title to the goods passes to the customers, whether or not billed, depending on the method regularly employed in keeping the taxpayer's books.

**(iii) Other permissible methods.** Special methods of accounting are described elsewhere in chapter 1 of the Code and the regulations thereunder. For example, see the following sections and the regulations thereunder: Sections 61 and 162, relating to the crop method of accounting; section 453, relating to the installment method; section 460, relating to the long-term contract methods. In addition, special methods of accounting for particular items of income and expense are provided under other sections of chapter 1. For example, see section 174, relating to research and experimental expenditures, and section 175, relating to soil and water conservation expenditures.

**(iv) Combinations of the foregoing methods.**

**(a)** In accordance with the following rules, any combination of the foregoing methods of accounting will be permitted in connection with a trade or business if such combination clearly reflects income and is consistently used. Where a combination of methods of accounting includes any special methods, such as those referred to in subdivision (iii) of this subparagraph, the taxpayer must comply with the requirements relating to such special methods. A taxpayer using an accrual method of accounting with respect to purchases and sales may use the cash method in computing all other items of income and expense. However, a taxpayer who uses the cash method of accounting in computing gross income from his trade or business shall use the cash method in computing expenses of such trade or business. Similarly, a taxpayer who uses an accrual method of accounting in computing business expenses shall use an accrual method in computing items affecting gross income from his trade or business.

**(b)** A taxpayer using one method of accounting in computing items of income and deductions of his trade or business may compute other items of income and deductions not connected with his trade or business under a different method of accounting.

**(2) Special rules.**

**(i)** In any case in which it is necessary to use an inventory the accrual method of accounting must be used with regard to purchases and sales unless otherwise authorized under subdivision (ii) of this subparagraph.

**(ii)** No method of accounting will be regarded as clearly reflecting income unless all items of gross profit and deductions are treated with consistency from year to year. The Commissioner may authorize a taxpayer to adopt or change to a method of accounting permitted by this chapter although the method is not specifically described in the regulations in this part if, in the opinion of the Commissioner, income is clearly reflected by the use of such method. Further, the Commissioner may authorize a taxpayer to continue the use of a method of accounting consistently used by the taxpayer, even though not specifically authorized by the regulations in this part, if, in the opinion of the Commissioner, income is clearly reflected by the use of such method. See section 446(a) and paragraph (a) of this section, which require that taxable income shall be computed under the method of accounting on the basis of which the taxpayer regularly computes his income in keeping his books, and section 446(e) and paragraph (e) of this section, which require the prior approval of the Commissioner in the case of changes in accounting method.

**(iii)** The timing rules of § 1.1502-13 are a method of accounting for intercompany transactions (as defined in § 1.1502-13(b)(1)(i)), to be applied by each member of a consolidated group in addition to the member's other methods of accounting. See § 1.1502-13(a)(3)(i). This paragraph (c)(2)(iii) is applicable to consolidated return years beginning on or after November 7, 2001.

**(d) Taxpayer engaged in more than one business.**

**(1)** Where a taxpayer has two or more separate and distinct trades or businesses, a different method of accounting may be used for each trade or business, provided the method used for each trade or business clearly reflects the income of that particular trade or business. For example, a taxpayer may account for the operations of a personal service business on the cash receipts and disbursements method and of a manufacturing business on an accrual method, provided such businesses are separate and distinct and the methods used for each clearly reflect income. The method first used in accounting for business income and deductions in connection with each trade or business, as evidenced in the taxpayer's income tax return in which such income or deductions are first reported, must be consistently followed thereafter.

**(2)** No trade or business will be considered separate and distinct for purposes of this paragraph unless a complete and separable set of books and records is kept for such trade or business.

**(3)** If, by reason of maintaining different methods of accounting, there is a creation or shifting of profits or losses between the trades or businesses of the taxpayer (for example, through inventory adjustments, sales, purchases, or expenses) so that income of the taxpayer is not clearly reflected, the trades or businesses of the taxpayer will not be considered to be separate and distinct.

**(e) Requirement respecting the adoption or change of accounting method.**

**(1)** A taxpayer filing his first return may adopt any permissible method of accounting in computing taxable income for the taxable year covered by such return. See section 446(c) and paragraph (c) of this section for permissible methods. Moreover, a taxpayer may adopt any permissible method of accounting in connection with each separate and distinct trade or business, the income from which is reported for the first time. See section 446(d) and paragraph (d) of this section. See also section 446(a) and paragraph (a) of this section.

**(2)**

**(i)** Except as otherwise expressly provided in chapter 1 of the Code and the regulations thereunder, a taxpayer who changes the method of accounting employed in keeping his books shall, before computing his income upon such new method for purposes of taxation, secure the consent of the Commissioner. Consent must be secured whether or not such method is proper or is permitted under the Internal Revenue Code or the regulations thereunder.

**(ii)**

(a) [Reserved]. For further guidance, see § 1.446-1T(e)(2)(ii)(a).

(b) [Reserved]. For further guidance, see § 1.446-1T(e)(2)(ii)(b).

(c) A change in an overall plan or system of identifying or valuing items in inventory is a change in method of accounting. Also a change in the treatment of any material item used in the overall plan for identifying or valuing items in inventory is a change in method of accounting.

(d) Changes involving depreciable or amortizable assets. [Reserved]. For further guidance, see § 1.446-1T(e)(2)(ii)(d).

**(iii) Examples.** [Reserved]. For further guidance, see § 1.446-1T(e)(2)(iii).

**(3)**

**(i)** Except as otherwise provided under the authority of paragraph (e)(3)(ii) of this section, to secure the Commissioner's consent to a taxpayer's change in method of accounting the taxpayer must file an application on Form 3115 with the Commissioner during the taxable year in which the taxpayer desires to make the change in method of accounting. To the extent applicable, the taxpayer must furnish all information requested on the Form 3115. This information includes all classes of items that will be treated differently under the new method of accounting, any amounts that will be duplicated or omitted as a result of the proposed change, and the taxpayer's computation of any adjustments necessary to prevent such duplications or omissions. The Commissioner may require such other information as may be necessary to determine whether the proposed change will be permitted. Permission to change a taxpayer's method of accounting will not be granted unless the taxpayer agrees to the Commissioner's prescribed terms and conditions for effecting the change, including the taxable year or years in which any adjustment necessary to prevent amounts from being duplicated or omitted is to be taken into account. See section 481 and the regulations thereunder, relating to certain adjustments resulting from accounting method changes, and section 472 and the regulations thereunder, relating to adjustments for changes to and from the last-in, first-out inventory method. For any Form 3115 filed on or after May 15, 1997, see § 1.446-1T(e)(3)(i)(B).

**(ii)** Notwithstanding the provisions of paragraph (e)(3)(i) of this section, the Commissioner may prescribe administrative procedures under which taxpayers will be permitted to change their method of accounting. The administrative procedures shall prescribe those terms and conditions necessary to obtain the Commissioner's consent to effect the change and to prevent amounts from being duplicated or omitted. The terms and conditions that may be prescribed by the Commissioner may include terms and conditions that require the change in method of accounting to be effected on a cut-off basis or by an adjustment under section 481(a) to be taken into account in the taxable year or years prescribed by the Commissioner.

**(iii)** This paragraph (e)(3) applies to Forms 3115 filed on or after December 31, 1997. For other Forms 3115, see § 1.446-1(e)(3) in effect prior to December 31, 1997 (§ 1.446-1(e)(3) as contained in the 26 CFR part 1 edition revised as of April 1, 1997).

**(4) Effective date.** [Reserved]. For further guidance, see § 1.446(e)- 1T(e)(4)(I) and (ii).

**SEC. 301.6402-2. CLAIMS FOR CREDIT OR REFUND.**

**(a) Requirement that claim be filed.**

**(1)** Credits or refunds of overpayments may not be allowed or made after the expiration of the statutory period of limitation properly applicable unless, before the expiration of such period, a claim therefor has been filed by the taxpayer. Furthermore, under section 7422, a civil action for refund may not be instituted unless a claim has been filed within the properly applicable period of limitation.

**(2)** In the case of a claim filed prior to April 15, 1968, the claim together with appropriate supporting evidence shall be filed in the office of the internal revenue officer to whom the tax was paid or with the assistant regional Commissioner (alcohol, tobacco, and firearms) where the regulations respecting the particular tax to which the claim relates specifically require the claim to be filed with that officer. Except as provided in paragraph (b) of § 301.6091-1 (relating to hand-carried documents), in the case of a claim filed after April 14, 1968, the claim, together with appropriate supporting evidence, shall be filed (i) with the Director of International Operations if the tax was paid to him or (ii) with the assistant regional Commissioner (alcohol, tobacco, and firearms) where the regulations respecting the particular tax to which the claim relates specifically require the claim to be filed with that officer; otherwise, the claim with appropriate supporting evidence must be filed with the service center serving the internal revenue district in which the tax was paid. As to interest in the case of credits or refunds, see section 6611. See section 7502 for provisions treating timely mailing as timely filing and section 7503 for time for filing claim when the last day falls on Saturday, Sunday, or legal holiday.

**(b) Grounds set forth in claim.**

**(1)** No refund or credit will be allowed after the expiration of the statutory period of limitation applicable to the filing of a claim therefor except upon one or more of the grounds set forth in a claim filed before the expiration of such period. The claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof. The statement of the grounds and facts must be verified by a written declaration that it is made under the penalties of perjury. A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

**(2)** Neither the district director nor the director of the regional service center has authority to refund on equitable grounds penalties or other amounts legally collected.

**(c)** Form for filing claim. Except for claims filed after June 30, 1976 for the refunding of overpayment of income taxes, all claims by taxpayers for the refunding of taxes, interest, penalties, and additions to tax shall be made on Form 843. For special rules applicable to income tax, see § 301.6402-3. For other provisions relating to credits and refunds of taxes other than income tax, see the regulations relating to the particular tax.

**(d) Separate claims for separate taxable periods.** In the case of income, gift, and Federal unemployment taxes, a separate claim shall be made for each type of tax for each taxable year or period.

**(e) Proof of representative capacity.** If a return is filed by an individual and, after his death, a refund claim is filed by his legal representative, certified copies of the letters testamentary, letters of administration, or other similar evidence must be annexed to the claim, to show the authority of the legal representative to file the claim. If an executor, administrator, guardian, trustee, receiver, or other fiduciary files a return and thereafter a refund claim is filed by the same fiduciary, documentary evidence to establish the legal authority of the fiduciary need not accompany the claim, provided a statement is made in the claim showing that the return was filed by the fiduciary and that the latter is still acting. In such cases, if a refund is to be paid, letters testamentary, letters of administration, or other evidence may be required, but should be submitted only upon the receipt of a specific request therefor. If a claim is filed by a fiduciary other than the one by whom the return was filed, the necessary documentary evidence should accompany the claim. A claim may be executed by an agent of the person assessed, but in such case a power of attorney must accompany the claim.

**(f)** Mailing of refund check. (1) Checks in payment of claims allowed will be drawn in the names of the persons entitled to the money and, except as provided in subparagraph (2) of this paragraph (f), the checks may be sent direct to the claimant or to such person in care of an attorney or agent who has filed a power of attorney specifically authorizing him to receive such checks.

**(2)** Checks in payment of claims which have either been reduced to judgment or settled in the course or as a result of litigation will be drawn in the name of the person or persons entitled to the money and will be sent to the Assistant Attorney General, Tax Division, Department of Justice, for delivery to the taxpayer or the counsel of record in the court proceeding.

**(3)** For restrictions on the assignment of claims, see section 3477 of the Revised Statutes (31 U.S.C. 203).

**SEC. 301.9100-3. OTHER EXTENSIONS.**

**(a) In general.** Requests for extensions of time for regulatory elections that do not meet the requirements of § 301.9100-2 must be made under the rules of this section. Requests for relief subject to this section will be granted when the taxpayer provides the evidence (including affidavits described in paragraph (e) of this section) to establish to the satisfaction of the Commissioner that the taxpayer acted reasonably and in good faith, and the grant of relief will not prejudice the interests of the Government.

**(b) Reasonable action and good faith--**

**(1) In general.** Except as provided in paragraphs (b)(3)(i) through (iii) of this

section, a taxpayer is deemed to have acted reasonably and in good faith if the taxpayer–

> **(i)** Requests relief under this section before the failure to make the regulatory election is discovered by the Internal Revenue Service (IRS);
>
> **(ii)** Failed to make the election because of intervening events beyond the taxpayer's control;
>
> **(iii)** Failed to make the election because, after exercising reasonable diligence (taking into account the taxpayer's experience and the complexity of the return or issue), the taxpayer was unaware of the necessity for the election;
>
> **(iv)** Reasonably relied on the written advice of the Internal Revenue Service (IRS); or
>
> **(v)** Reasonably relied on a qualified tax professional, including a tax professional employed by the taxpayer, and the tax professional failed to make, or advise the taxpayer to make, the election.

**(2) Reasonable reliance on a qualified tax professional.** For purposes of this paragraph (b), a taxpayer will not be considered to have reasonably relied on a qualified tax professional if the taxpayer knew or should have known that the professional was not–

> **(i)** Competent to render advice on the regulatory election; or
>
> **(ii)** Aware of all relevant facts.

**(3)** Taxpayer deemed to have not acted reasonably or in good faith. For purposes of this paragraph (b), a taxpayer is deemed to have not acted reasonably and in good faith if the taxpayer–

> **(i)** Seeks to alter a return position for which an accuracy-related penalty has been or could be imposed under section 6662 at the time the taxpayer requests relief (taking into account any qualified amended return filed within the meaning of § 1.6664-2(c)(3) of this chapter) and the new position requires or permits a regulatory election for which relief is requested;
>
> **(ii)** Was informed in all material respects of the required election and related tax consequences, but chose not to file the election; or
>
> **(iii)** Uses hindsight in requesting relief. If specific facts have changed since the due date for making the election that make the election advantageous to a taxpayer, the IRS will not ordinarily grant relief. In such a case, the IRS will grant relief only when the taxpayer provides strong proof that the taxpayer's decision to seek relief did not involve hindsight.

**(c) Prejudice to the interests of the Government--**

**(1) In general.** The Commissioner will grant a reasonable extension of time to make a regulatory election only when the interests of the Government will not be prejudiced by the granting of relief. This paragraph (c) provides the standards the Commissioner will use to determine when the interests of the Government are prejudiced.

**(i) Lower tax liability.** The interests of the Government are prejudiced if granting relief would result in a taxpayer having a lower tax liability in the aggregate for all taxable years affected by the election than the taxpayer would have had if the election had been timely made (taking into account the time value of money). Similarly, if the tax consequences of more than one taxpayer are affected by the election, the Government's interests are prejudiced if extending the time for making the election may result in the affected taxpayers, in the aggregate, having a lower tax liability than if the election had been timely made.

**(ii)** Closed years. The interests of the Government are ordinarily prejudiced if the taxable year in which the regulatory election should have been made or any taxable years that would have been affected by the election had it been timely made are closed by the period of limitations on assessment under section 6501(a) before the taxpayer's receipt of a ruling granting relief under this section. The IRS may condition a grant of relief on the taxpayer providing the IRS with a statement from an independent auditor (other than an auditor providing an affidavit pursuant to paragraph (e)(3) of this section) certifying that the interests of the Government are not prejudiced under the standards set forth in paragraph (c)(1)(i) of this section.

**(2) Special rules for accounting method regulatory elections.** The interests of the Government are deemed to be prejudiced except in unusual and compelling circumstances if the accounting method regulatory election for which relief is requested–

**(i)** Is subject to the procedure described in § 1.446-1(e)(3)(i) of this chapter (requiring the advance written consent of the Commissioner);

**(ii)** Requires an adjustment under section 481(a) (or would require an adjustment under section 481(a) if the taxpayer changed to the method of accounting for which relief is requested in a taxable year subsequent to the taxable year the election should have been made);

**(iii)** Would permit a change from an impermissible method of accounting that is an issue under consideration by examination, an appeals office, or a federal court and the change would provide a more favorable method or more favorable terms and conditions than if the change were made as part of an examination; or

**(iv)** Provides a more favorable method of accounting or more favorable

terms and conditions if the election is made by a certain date or taxable year.

**(3) Special rules for accounting period regulatory elections.** The interests of the Government are deemed to be prejudiced except in unusual and compelling circumstances if an election is an accounting period regulatory election (other than the election to use other than the required taxable year under section 444) and the request for relief is filed more than 90 days after the due date for filing the Form 1128, Application to Adopt, Change, or Retain a Tax Year (or other required statement).

**(d) Effect of amended returns--**

**(1) Second examination under section 7605(b).** Taxpayers requesting and receiving an extension of time under this section waive any objections to a second examination under section 7605(b) for the issue(s) that is the subject of the relief request and any correlative adjustments.

**(2) Suspension of the period of limitations under section 6501(a).** A request for relief under this section does not suspend the period of limitations on assessment under section 6501(a). Thus, for relief to be granted, the IRS may require the taxpayer to consent under section 6501(c)(4) to an extension of the period of limitations on assessment for the taxable year in which the regulatory election should have been made and any taxable years that would have been affected by the election had it been timely made.

**(e) Procedural requirements--**

**(1) In general.** Requests for relief under this section must provide evidence that satisfies the requirements in paragraphs (b) and (c) of this section, and must provide additional information as required by this paragraph (e).

**(2) Affidavit and declaration from taxpayer.** The taxpayer, or the individual who acts on behalf of the taxpayer with respect to tax matters, must submit a detailed affidavit describing the events that led to the failure to make a valid regulatory election and to the discovery of the failure. When the taxpayer relied on a qualified tax professional for advice, the taxpayer's affidavit must describe the engagement and responsibilities of the professional as well as the extent to which the taxpayer relied on the professional. The affidavit must be accompanied by a dated declaration, signed by the taxpayer, which states: "Under penalties of perjury, I declare that I have examined this request, including accompanying documents, and, to the best of my knowledge and belief, the request contains all the relevant facts relating to the request, and such facts are true, correct, and complete." The individual who signs for an entity must have personal knowledge of the facts and circumstances at issue.

**(3) Affidavits and declarations from other parties.** The taxpayer must submit detailed affidavits from the individuals having knowledge or information about the events

that led to the failure to make a valid regulatory election and to the discovery of the failure. These individuals must include the taxpayer's return preparer, any individual (including an employee of the taxpayer) who made a substantial contribution to the preparation of the return, and any accountant or attorney, knowledgeable in tax matters, who advised the taxpayer with regard to the election. An affidavit must describe the engagement and responsibilities of the individual as well as the advice that the individual provided to the taxpayer. Each affidavit must include the name, current address, and taxpayer identification number of the individual, and be accompanied by a dated declaration, signed by the individual, which states: "Under penalties of perjury, I declare that I have examined this request, including accompanying documents, and, to the best of my knowledge and belief, the request contains all the relevant facts relating to the request, and such facts are true, correct, and complete."

**(4) Other information.** The request for relief filed under this section must also contain the following information–

**(i)** The taxpayer must state whether the taxpayer's return(s) for the taxable year in which the regulatory election should have been made or any taxable years that would have been affected by the election had it been timely made is being examined by a district director, or is being considered by an appeals office or a federal court. The taxpayer must notify the IRS office considering the request for relief if the IRS starts an examination of any such return while the taxpayer's request for relief is pending;

**(ii)** The taxpayer must state when the applicable return, form, or statement used to make the election was required to be filed and when it was actually filed;

**(iii)** The taxpayer must submit a copy of any documents that refer to the election;

**(iv)** When requested, the taxpayer must submit a copy of the taxpayer's return for any taxable year for which the taxpayer requests an extension of time to make the election and any return affected by the election; and

**(v)** When applicable, the taxpayer must submit a copy of the returns of other taxpayers affected by the election.

**(5) Filing instructions.** A request for relief under this section is a request for a letter ruling. Requests for relief should be submitted in accordance with the applicable procedures for requests for a letter ruling and must be accompanied by the applicable user fee.

**(f) Examples.** The following examples illustrate the provisions of this section:

**Example 1.** Taxpayer discovers own error. Taxpayer A prepares A's 1997 income tax return. A is unaware that a particular regulatory election is available to report a transaction in a

particular manner. A files the 1997 return without making the election and reporting the transaction in a different manner. In 1999, A hires a qualified tax professional to prepare A's 1999 return. The professional discovers that A did not make the election. A promptly files for relief in accordance with this section. Assume paragraphs (b)(3)(i) through (iii) of this section do not apply. Under paragraph (b)(1)(i) of this section, A is deemed to have acted reasonably and in good faith because A requested relief before the failure to make the regulatory election was discovered by the IRS.

**Example 2.** Reliance on qualified tax professional. Taxpayer B hires a qualified tax professional to advise B on preparing B's 1997 income tax return. The professional was competent to render advice on the election and B provided the professional with all the relevant facts. The professional fails to advise B that a regulatory election is necessary in order for B to report income on B's 1997 return in a particular manner. Nevertheless, B reports this income in a manner that is consistent with having made the election. In 2000, during the examination of the 1997 return by the IRS, the examining agent discovers that the election has not been filed. B promptly files for relief in accordance with this section, including attaching an affidavit from B's professional stating that the professional failed to advise B that the election was necessary. Assume paragraphs (b)(3)(i) through (iii) of this section do not apply. Under paragraph (b)(1)(v) of this section, B is deemed to have acted reasonably and in good faith because B reasonably relied on a qualified tax professional and the tax professional failed to advise B to make the election.

**Example 3.** Accuracy-related penalty. Taxpayer C reports income on its 1997 income tax return in a manner that is contrary to a regulatory provision. In 2000, during the examination of the 1997 return, the IRS raises an issue regarding the reporting of this income on C's return and asserts the accuracy-related penalty under section 6662. C requests relief under this section to elect an alternative method of reporting the income. Under paragraph (b)(3)(i) of this section, C is deemed to have not acted reasonably and in good faith because C seeks to alter a return position for which an accuracy-related penalty could be imposed under section 6662.

**Example 4.** Election not requiring adjustment under section 481(a). Taxpayer D prepares D's 1997 income tax return. D is unaware that a particular accounting method regulatory election is available. D files D's 1997 return without making the election and uses another permissible method of accounting. The applicable regulation provides that the election is made on a cut-off basis (without an adjustment under section 481(a)). In 1998, D requests relief under this section to make the election under the regulation. If D were granted an extension of time to make the election, D would pay no less tax than if the election had been timely made. Assume that paragraphs (c)(2)(i), (iii), and (iv) of this section do not apply. Under paragraph (c)(2)(ii) of this section, the interests of the Government are not deemed to be prejudiced because the election does not require an adjustment under section 481(a).

**Example 5.** Election requiring adjustment under section 481(a). The facts are the same as in Example 4 of this paragraph (f) except that the applicable regulation provides that the election requires an adjustment under section 481(a). Under paragraph (c)(2)(ii) of this section, the

interests of the Government are deemed to be prejudiced except in unusual or compelling circumstances.

**Example 6.** Under examination by the IRS. A regulation permits an automatic change in method of accounting for an item on a cut-off basis. Taxpayer E reports income on E's 1997 income tax

return using an impermissible method of accounting for the item. In 2000, during the examination of the 1997 return by the IRS, the examining agent notifies E in writing that its method of accounting for the item is an issue under consideration. Any change from the impermissible method made as part of an examination is made with an adjustment under section 481(a). E requests relief under this section to make the change pursuant to the regulation for 1997. The change on a cut-off basis under the regulation would be more favorable than if the change were made with an adjustment under section 481(a) as part of an examination. Under paragraph (c)(2)(iii) of this section, the interests of the Government are deemed to be prejudiced except in unusual and compelling circumstances because E seeks to change from an impermissible method of accounting that is an issue under consideration in the examination on a basis that is more favorable than if the change were made as part of an examination.

# APPENDIX B

Rev. Proc. 99-17, 1999-7 I.R.B. 52, 1999-1 C.B. 503, 1999 WL 65395 (IRS RPR)

1. Internal Revenue Service (I.R.S.)

Revenue Procedure

COMMODITIES DEALERS; SECURITIES OR COMMODITIES TRADERS: PROCEDURES FOR MAKING ELECTIONS

Published: February 16, 1999

*26 CFR 601.204: Changes in accounting periods and in methods of accounting.*

**Commodities dealers; securities or commodities traders: procedures for making elections.** This procedure prescribes the time and manner for dealers in commodities and traders in securities or commodities to elect to use the mark-to-market method of accounting under section 475 of the Code.

SECTION 1. PURPOSE

This revenue procedure provides the exclusive procedure for dealers in commodities and traders in securities or commodities to make an election to use the mark-to-market method of accounting under § 475(e) or (f) of the Internal Revenue Code.

SECTION 2. BACKGROUND

.01 Section 475(e) allows a dealer in commodities to elect mark-to-market accounting for commodities. Mark-to-market accounting under the election, however, does not apply to commodities that meet certain criteria and are identified under § 475(b)(2) and (e). Such an identification is ineffective unless it is made before the close of the day on which the commodity was acquired, originated, or entered into. Section 475(f) grants similar treatment to traders in securities and commodities.

.02 The legislative history to § 475(e) and (f) states that the mark-to-market election will be made in the time and manner prescribed by the Secretary and will be effective for the taxable year for which it is made and all subsequent taxable years, unless revoked with the consent of the Secretary. H.R. Rep. No. 148, 105th Cong., 1st Sess. 446 (1997).

.03 Use of mark-to-market accounting under § 475(e) or (f) is a method of accounting. Generally, a taxpayer must obtain the consent of the Commissioner to change a method of accounting for federal income tax purposes. To obtain this consent, a Form 3115, Application for Change in Accounting Method, generally must be filed during the taxable year in which the taxpayer desires to make the change in method of accounting. The Commissioner, however, is authorized to prescribe administrative procedures setting forth the limitations, terms, and conditions the Commissioner deems necessary to obtain consent. See § 446(e) and the regulations thereunder.

.04 In computing taxable income, § 481(a) requires a taxpayer to take into account those adjustments necessary to prevent amounts from being duplicated or omitted when the taxpayer's taxable income is computed under a method of accounting different from the method used to compute taxable income for the preceding taxable year.

.05 For a taxpayer who elects under § 475(e) or (f) to change its method of accounting for the taxable year that includes August 5, 1997, § 1001(d)(4) of the Taxpayer Relief Act of 1997 (the Act), Pub. L. No. 105-34, 111 Stat. 788 (August 5, 1997), provides: (1) that any identification required with respect to securities and commodities held on August 5, 1997, is treated as timely made if made on or before September 4, 1997; and (2) that the net amount of the adjustments required to be taken into account by the taxpayer under § 481 is taken into account ratably over the 4-taxable-year period beginning with the taxable year that includes August 5, 1997. The Conference Report to the Act states that any elections made for a year after the taxable year that includes August 5, 1997, will be governed by rules and procedures established by the Secretary. H.R. Conf. Rep. No. 220, 105th Cong., 1st Sess. 516 (1997).

SECTION 3. SCOPE

This revenue procedure applies to commodities dealers, securities traders, and commodities traders that want to make an election to use the mark-to-market method of accounting under § 475(e) or (f).

SECTION 4. EFFECT OF ELECTION

An election under § 475(e) or (f) determines the method of accounting that an electing taxpayer is required to use for federal income tax purposes for securities or commodities subject to the election. Thus, beginning with the first taxable year for which the election is effective (the election year) and continuing for all subsequent taxable years (unless the election is revoked with the consent of the Commissioner), a method of accounting for securities or commodities subject to the election is impermissible for an electing taxpayer unless the method is in accordance with § 475 and the regulations thereunder. If a taxpayer described in section 3 of this revenue procedure makes an election under section 5 of this revenue procedure, and the taxpayer's method of accounting for its taxable year immediately preceding the election year is inconsistent with § 475, the taxpayer is required to change its method of accounting to comply

with its election. Section 6 of this revenue procedure contains procedures for effecting this change. A taxpayer that makes a § 475(e) or (f) election but fails to change its method of accounting to comply with that election is using an impermissible method.

SECTION 5. PROCEDURES FOR MAKING THE MARK-TO-MARKET ELECTIONS

.01 *Elections effective for taxable years for which the original federal income tax return was filed before March 18, 1999.* For a taxpayer to make a § 475(e) or (f) election that is effective for a taxable year for which the original federal income tax return was filed before March 18, 1999, the taxpayer must either:

(1) have properly reflected the application of § 475 (including any required § 481(a) adjustment) in the calculation of the taxpayer's tax liability on its original federal income tax return for the election year; or

(2) have failed to properly reflect the application of § 475 (including any required § 481(a) adjustment) in the calculation of the taxpayer's tax liability on its original federal income tax return for the election year, but clearly demonstrated on that return its intent to make the election for that year (for example, by a statement on, or attachment to, the return), and file an amended return for the election year on or before June 16, 1999, that properly reflects the application of § 475 (including any required § 481(a) adjustment).

.02 *Elections effective for other taxable years beginning before January 1, 1999.* For a taxpayer to make a § 475(e) or (f) election that is effective for a taxable year which begins before January 1, 1999, and for which the original federal income tax return is filed on or after March 18, 1999, the taxpayer must make the election by attaching a statement that satisfies the requirements in section 5.04 of this revenue procedure to an original federal income tax return for the election year that is timely filed (including extensions).

.03 *Elections effective for a taxable year beginning on or after January 1, 1999.*

(1) *General procedure.* Except as provided in section 5.03(2) of this revenue procedure, for a taxpayer to make a § 475(e) or (f) election that is effective for a taxable year beginning on or after January 1, 1999, the taxpayer must file a statement that satisfies the requirements in section 5.04 of this revenue procedure. The statement must be filed not later than the due date (without regard to extensions) of the original federal income tax return for the taxable year immediately preceding the election year and must be attached either to that return or, if applicable, to a request for an extension of time to file that return.

(2) *New taxpayers.* A new taxpayer is a taxpayer for which no federal income tax return was required to be filed for the taxable year immediately preceding the election year. A new taxpayer makes the election by placing in its books and records no later than 2 months and 15 days after the first day of the election year a statement that satisfies the requirements in section 5.04 of this revenue procedure. To notify the Service that the election was made, the new taxpayer must attach a copy of the statement to its original federal income tax return for the election year.

.04 *Required statement.* The statement must describe the election being made, the first taxable year for which the election is effective, and, in the case of an election under § 475(f), the trade or business for which the election is made.

SECTION 6. CHANGE IN METHOD OF ACCOUNTING

.01 *Consent.* A change in a taxpayer's method of accounting to mark-to-market accounting is a change in method of accounting to which the provisions of §§ 446 and 481 and the regulations thereunder apply. The Commissioner hereby grants consent for a taxpayer to change its method of accounting for securities or commodities, as appropriate, if the following conditions are satisfied:

(1) the taxpayer is described in section 3 of this revenue procedure;

(2) the taxpayer complies with the election requirements set forth in section 5 of this revenue procedure;

(3) the method of accounting to which the taxpayer is changing is in accordance with its election under § 475;

(4) the year of change is the election year; and

(5) the taxpayer complies with the applicable requirements of this section 6.

.02 *Filing requirements.*

(1) *Taxpayers electing under section 5.01.* A taxpayer described in sections 3 and 5.01(1) of this revenue procedure that changed its method of accounting to properly reflect the application of § 475 on its original federal income tax return for the election year has satisfied the filing requirements of this section 6.02. A taxpayer described in section 3 that is required to change its method of accounting to comply with its election under section 5.01(2) must comply with the requirements of section 6.02(2) of this revenue procedure (substituting the amended return required by section 5.01(2) for the original return referred to in section 6.02(2)).

(2) *Taxpayers electing under section 5.02 or 5.03(1).* A taxpayer described in section 3 of this revenue procedure that makes an election under section 5.02 or 5.03(1) of this revenue procedure and is required to change its method of accounting must complete and file a Form 3115 for the year of change pursuant to the filing requirements in section 6.02 of Rev. Proc. 98-60, 1998-51 I.R.B. 16. Thus, the original Form 3115 must be attached to the taxpayer's timely filed (including extensions) original federal income tax return for the year of change, and a copy of the Form 3115 must be filed with the national office no later than when the original Form 3115 is filed with the federal income tax return for the year of change. The label described in section 6.02(3) of Rev. Proc. 98-60, however, should refer to this revenue procedure rather than to the APPENDIX of Rev. Proc. 98-60. Further, in the additional statement described in section 6.02(5) of Rev. Proc. 98-60, the taxpayer must agree to all the terms and conditions in this revenue procedure rather than those in Rev. Proc. 98-60.

.03 *Section 481(a) adjustment.* If a taxpayer changes its method of accounting under section 6.01 of this revenue procedure, the taxpayer must take into account the net amount of the § 481(a) adjustment in the manner provided in section 5.04 of Rev. Proc. 98-60. Thus, the § 481(a) adjustment generally is taken into account ratably over four taxable years beginning with the year of change. For purposes of § 481, a change in method of accounting made under this revenue procedure is a change in method of accounting initiated by the taxpayer.

SECTION 7. EFFECTIVE DATE

This revenue procedure is effective February 8, 1999, the date this revenue procedure was made available to the public.

SECTION 8. PAPERWORK REDUCTION ACT

The collections of information contained in this revenue procedure have been reviewed and approved by the Office of Management and Budget in accordance with the Paperwork Reduction Act (44 U.S.C. 3507) under control number 1545-1641.

The collections of information in this revenue procedure are in sections 5 and 6 of this revenue procedure. This information is required by the IRS to facilitate monitoring taxpayers that make the elections under § 475(e) or (f). This information will be used if a taxpayer making the election is audited. The likely recordkeepers and respondents are businesses or other for-profit institutions.

The reporting burden for the collection of information in section 6.02 of this revenue procedure is reflected in the burden of Form 3115. The burden of the requirement to file amended returns in section 5.01 of this revenue procedure is reflected in the burden of Forms 1120X and 1040X. The estimated total annual reporting and/or recordkeeping burden for the collection of information described in section 5.01-5.04 of this revenue procedure is 500 hours.

The estimated annual burden per respondent/recordkeeper varies from 15 minutes to 1 hour, depending on individual circumstances, with an estimated average of 30 minutes. The estimated number of respondents and/or recordkeepers is 1,000.

The estimated annual frequency of responses is once in the existence of each respondent.

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a valid control number assigned by the Office of Management and Budget.

Books or records relating to a collection of information must be retained as long as their contents may become material in the administration of any internal revenue law. Generally, tax returns and tax return information are confidential, as required by 26 U.S.C. 6103.

DRAFTING INFORMATION

The principal author of this revenue procedure is Jo Lynn Ricks of the Office of the Assistant Chief Counsel (Financial Institutions and Products). For further information regarding this revenue procedure, contact Ms. Ricks on (202) 622-3920 (not a toll-free call).

Rev. Proc. 99-17, 1999-7 I.R.B. 52, 1999-1 C.B. 503, 1999 WL 65395 (IRS RPR)

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Rev. Rul. 90-38, 1990-18 I.R.B. 7, 1990-1 C.B. 57, 1990 WL 657148 (IRS RRU)

1. Internal Revenue Service (I.R.S.)

Revenue Ruling

**CARRYING CHARGES; CAPITALIZED; BINDING ELECTION; SUBSEQUENT DEDUCTIONS**

Published: April 10, 1990

Section 266. -- Carrying Charges, 26 CFR 1.266-1: Taxes and carrying charges chargeable to capital account and treated as capital items.

(Also Sections 446, 7805; 1.446-1, 301.7805-1.)

**Carrying charges; capitalized; binding election; subsequent deductions.** Unless the Commissioner consents, a taxpayer may not change from an erroneous method of accounting retroactively by amending prior returns, even if the period for amending the return for the first year in which the erroneous method was used has not expired. Rev. Rul. 70-539 revoked; Rev. Ruls. 75-56 and 76-325 modified.

ISSUE AND FACTS

The Internal Revenue Service has reconsidered the position set forth in Rev. Rul. 70-539, 1970-2 C.B. 70. In Rev. Rul. 70-539, a corporation organized in 1966 and engaged in developing real estate capitalized interest, taxes, and other carrying charges by including them in the tax basis of real estate sold. Rev. Rul. 70-539 holds that the corporation did not make a valid election under section 266 of the Internal Revenue Code because it failed to file a statement with its returns for 1966, 1967, and 1968 identifying the items it was capitalizing as required by section 1.266-1(c)(3) of the Income Tax Regulations. Because the corporation capitalized these items without making a valid election, Rev. Rul. 70-539 holds that the corporation may treat these items as current operating expenses on amended returns for 1966, 1967, and 1968. Rev. Rul. 75-56, 1975-1 C.B. 98, distinguishes Rev. Rul. 70-539 by holding that a taxpayer may not amend its returns to deduct erroneously capitalized expenses if the period for amending the first return reflecting the capitalized expenses has expired.

LAW AND ANALYSIS

Section 446(e) of the Code and section 1.446-1(e) of the regulations provide that a taxpayer must secure the consent of the Commissioner before changing a method of accounting for federal income tax purposes.

Section 1.446-1(e) of the regulations provides rules for determining what a method of accounting is, how an adoption of a method of accounting occurs, and how a change in method of accounting may be made.

Section 1.446-1(e)(2)(ii)(a) of the regulations provides:

A change in the method of accounting includes a change in the overall plan of accounting for gross income or deductions or a change in the treatment of any material item used in such overall plan. Although a method of accounting may exist under this definition without the necessity of a pattern of consistent treatment of an item, in most instances a method of accounting is not established for an item without such consistent treatment.

The treatment of a material item in the same way in determining the gross income or deductions in two or more consecutively filed tax returns represents consistent treatment of that item for purposes of section 1.446-1(e)(2)(ii)(a) of the regulations. See Diebold, Inc. v. United States, 891 F.2d 1579 (Fed. Cir. 1989). In addition, section 1.446-1(e)(2)(i) indicates that the consistent, but erroneous, treatment of material items constitutes a method of accounting. See section 1.446-1(e)(2)(iii), Examples (6)-(8); see also Fruehauf Corp. v. Commissioner, 356 F.2d 975 (6th Cir.), cert. denied, 385 U.S. 822 (1966); Commissioner v. O. Liquidating Corp., 292 F.2d 225 (3rd Cir.), cert. denied, 368 U.S. 898 (1961); and Rev. Rul. 80-190, 1980-2 C.B. 161. Compare Rev. Rul. 72-491, 1972-2 C.B. 104, which holds that a taxpayer erroneously using an accelerated method of depreciation for ‘used‘ property may file an amended return using a proper method, provided the taxpayer has not filed the tax return for the succeeding tax year.

If a taxpayer treats an item properly in the first return that reflects the item, however, it is not necessary for the taxpayer to treat the item consistently in two or more consecutive tax returns before it has adopted a method of accounting. Section 1.446-1(e)(1) of the regulations provides, for example, that a taxpayer filing its first return may adopt any permissible method of accounting in computing taxable income for the tax year covered by such return. Similarly, the Supreme Court has held that once a permissible election as to a method of accounting for an item has been made on a return, it may not be changed after the time for filing the return has expired. See Pacific National Co. v. Welch, 304 U.S. 191 (1938), 1938-1 C.B. 274; see also Lord v. United States, 296 F.2d 333 (9th Cir. 1961); National Western Life Insurance Co. v. Commissioner, 54 T.C. 33 (1970); Rev. Rul. 74-154, 1974-1 C.B. 59.

Section 1.446-1(e)(3)(i) of the regulations provides that (except as otherwise provided by administrative procedures prescribed by the Commissioner) in order to secure the Commissioner's consent to a change of a taxpayer's method of accounting, the taxpayer must file an application on Form 3115, Application for Change in Accounting Method, within 180 days after the beginning of the tax year in which the taxpayer desires to make the change.

If a taxpayer's treatment of an item is a method of accounting under these principles, section 446(e) of the Code and section 1.446-1(e)(3) of the regulations preclude a taxpayer from making a retroactive change in method of accounting by amending prior tax returns without the consent of the Commissioner. Section 446(e) authorizes the Commissioner to consent to a retroactive change in method of accounting, whether the change is from a permissible method or an impermissible method. E.g., Barber v. Commissioner, 64 T.C. 314 (1975); Notice 89-15, 1989-1 C.B. 816; Notice 88-78, 1988-2 C.B. 394, modified by Notice 89-67, 1989-1 C.B. 723; Rev. Proc. 78-6, 1978-1 C.B. 558. Section 446(e) does not give the taxpayer a right to demand that a change in method be made retroactively, however. See Diebold, Inc., 891 F.2d at 1583. Except in certain limited circumstances, and as specifically provided by revenue procedure or other administrative pronouncement, a taxpayer that seeks to change its method of accounting in accordance with section 1.446-1(e) may only request to change the method of accounting prospectively. See section 1.446-1(e)(3)(i); section 4.04, Rev. Proc. 84-74, 1984-2 C.B. 736, 741.

Under section 1.446-1(e)(2)(i) of the regulations, consent to change any method of accounting used by a taxpayer is a matter within the discretion of the Commissioner. The Commissioner, however, may prescribe other administrative procedures, subject to such limitations, terms and conditions as are deemed necessary to obtain the Commissioner's consent, to permit taxpayers to change their accounting method to a permissible method. See section 1.446-1(e)(3)(ii). Permission to change a taxpayer's method of accounting will not be granted unless the taxpayer and the Commissioner agree to the terms, conditions, and adjustments under which the change will be effected. See section 1.446-1(e)(3)(i).

The corporation under consideration in Rev. Rul. 70-539 adopted a method of accounting when it filed the second consecutive tax return in which it erroneously capitalized charges for interest, taxes, and other carrying charges associated with real estate. In that ruling, the corporation, which was required to obtain the Commissioner's consent to change the erroneous method, was permitted by the Service to change the method which capitalized charges to a method that treated the charges as current expenses by timely amending all prior returns reflecting the erroneous capitalization. However, upon reconsideration, the Service has determined that the special procedure under section 266 of the Code contained in Rev. Rul. 70-539 is not an appropriate departure from the general requirements of section 446(e) and the regulations. The Service has further determined that, in the circumstances described in Rev. Rul. 70-539, consent should be granted only for a prospective change of accounting method and only pursuant to an application for consent made under the generally applicable rules of section 1.446-1(e)(3)(i).

HOLDING

A taxpayer may not, without the Commissioner's consent, retroactively change from an erroneous to a permissible method of accounting by filing amended returns, even if the period for amending the return for the first year in which the erroneous method was used has not expired. Thus, a taxpayer that, for two or more consecutive tax years, has capitalized interest and other carrying charges under section 266 of the Code without making a valid election as required by applicable regulations has nonetheless adopted a method of accounting with respect to the

interest and carrying charges. The taxpayer may not change that method of accounting by filing amended returns for those prior tax years. Instead, the taxpayer may only change the method of accounting with the consent of the Commissioner pursuant to section 1.446-1(e) of the regulations.

Consistent with the above, the Service will not follow Gimbel Bros., Inc. v. United States, 535 F.2d 14 (Ct. Cl. 1976), in which the court permitted the taxpayer to file amended returns for prior open years to effect a change in method of accounting for a material item.

EFFECT ON OTHER DOCUMENTS

Rev. Rul. 70-539 is revoked.

Rev. Rul. 75-56, 1975-1 C.B. 98, is modified to eliminate any inference that the statute of limitations must expire before the taxpayer has adopted a method of accounting under section 266 of the Code and, as modified, is revoked as obsolete.

Rev. Rul. 76-325, 1976-2 C.B. 88, is modified to delete the references to Rev. Rul. 70-539.

PROSPECTIVE APPLICATION

Under the authority contained in section 7805(b) of the Code, amended returns that were timely filed before April 30, 1990, the date this Revenue Ruling appears in the Internal Revenue Bulletin, to correct an impermissible capitalization method for expenses under section 266 with respect to all returns reflecting the impermissible method, will be accepted by the Service.

DRAFTING INFORMATION

The principal author of this revenue ruling is Carol Conjura of the Office of Assistant Chief Counsel (Income Tax and Accounting). For further information regarding this revenue ruling, contact Ms. Conjura on (202) 535-9363 (not a toll-free call).

Rev. Rul. 90-38, 1990-18 I.R.B. 7, 1990-1 C.B. 57, 1990 WL 657148 (IRS RRU)

END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.