**THE UNITED STATES COURT OF FEDERAL CLAIMS**

**No. 05-252 T**
**(Judge Charles F. Lettow)**

---

**EDWARD MARANDOLA, JR. and**
**CARMEN MARANDOLA,**

**Plaintiffs,**

**v.**

**THE UNITED STATES**

**Defendant.**

---

**REPLY OF THE UNITED STATES**
**TO PLAINTIFF'S BRIEF IN OPPOSITION TO**
**THE UNITED STATES' CROSS-MOTION**
**FOR SUMMARY JUDGMENT**

---

Defendant, The United States, hereby replies to plaintiff's brief in opposition to defendant's cross-motion for summary judgment in the above captioned case.

1. Changing to the mark-to-market method of accounting under I.R.C. § 475 requires the consent of the Secretary, which is governed by the procedures described in Revenue Procedure 99-17

Mr. Marandola[1] contends that the consent of the Secretary is not required for a change to the mark-to-market accounting method, referring to I.R.C. § 475(f)(3) which provides that:

> The elections under paragraphs (1) and (2) may be made separately for each trade or business and without the consent of the Secretary. Such an election, once made, shall apply to the taxable year for

---

[1] As noted in our opening brief, we will refer to plaintiffs collectively as "Mr. Marandola" or "plaintiff."

> which made and all subsequent taxable years unless revoked with the consent of the Secretary.

Mr. Marandola erroneously concludes that this provision permits traders in securities to change to the mark-to-market method of accounting retroactively and without authorization from the Secretary or his delegate, the Commissioner of Internal Revenue ("the Commissioner"). In making this argument, Mr. Marandola has confused the concepts of "electing a method of accounting" and "changing a method of accounting."[2] As discussed in our opening brief at 13, a taxpayer elects a method of accounting by filing a single tax return on which a permissible method has been used, or by filing two consecutive tax returns on which the same erroneous method has been used. Treas. Regs. §§ 1.446-1(e)(1), (e)(2)(ii)(a); *see* Rev. Rul. 90-38, 1990-1 C.B. 57. Once adopted, a method of accounting remains in effect until a taxpayer obtains the consent of the Secretary (or his delegate, the Commissioner) to change his or her method of accounting. 26 U.S.C. § 446(e); Treas. Reg. §1.446-1(e).

As demonstrated in our opening brief (at 13), Mr. Marandola had a history of reporting his trading activity by netting his long- and short-term capital gains and losses on his personal tax returns in the years prior to his belated attempt to change to the mark-to-market method for 1997 and subsequent tax years. The netting of long- and short-term capital gains and losses is a permissible method of accounting for the sale of securities. 26 U.S.C. § 1222. Thus, Mr.

---

[2] It should be noted that in spite of the distinction between "electing" and "changing" a method of accounting, practitioners and taxpayers alike commonly refer to changes in accounting methods as "elections" to use a different method. This terminology applies where the IRS has established procedures to allow for automatic changes in accounting methods, such as those authorized in the appendix of Rev. Proc. 2002-9. Automatic changes may be referred to as elections, because the Commissioner and the Secretary are deemed to consent to the change if the prescribed procedures are followed. Thus, in effect, taxpayers can elect to implement these changes in accounting methods by simply following the prescribed guidance.

Marandola established a method of accounting for his trading activity by filing a tax return on which a permissible method had been used. The requirement that he obtain the consent of the Commissioner to *change* that method is not inconsistent with the language of I.R.C. § 475(f)(3), which provides that the Secretary's consent is not required to *elect* the mark-to-market method of accounting. It is the act of *changing*, not initially electing, a method that requires the Secretary's consent in this instance.

The United States Tax Court recently interpreted I.R.C. § 475(f)(3), in an opinion that was released after the defendant filed its brief in support of its cross-motion for summary judgment. In *Knish v. Commissioner*, T.C. Memo. 2006-268, 2006 WL 3725132 (U.S.Tax Ct.), (December 18, 2006), the Tax Court rejected the taxpayers' contention that they had made an effective election to use the mark-to-market method. The court noted that, although § 475(f)(3) provides that the election may be made without the Secretary's consent--

> [s]ection 475 and the regulations do not provide procedures that specify the time and manner of making a mark-to-market election . . . .
>
> We look to the legislative history of section 475 to determine congressional intent because the statute is silent as to the procedures that must be followed to make a mark-to-market election. . . . The legislative history indicates that the Secretary has authority to prescribe the time and manner of the mark-to-market election. . . .
>
> The Commissioner has prescribed procedures detailing the requirements for a mark-to-market election pursuant to this authority. Rev. Proc. 99-17 [1999-1 C.B. 503] . . . .

2006 WL 3725132 at *3.[3]

[3]The court held that "[a] taxpayer wishing to make a mark-to-market election must file a statement electing the mark-to-market accounting method no later than the due date for the tax

The Tax Court went on to illustrate the difference between "election" of a method of accounting and a "change" in method of accounting, in the context of a newly-formed entity (a "new taxpayer"):

> [N]ew taxpayers (those for which no tax return was required to be filed for the year preceding the election year) may make a mark-to-market election in the first year of their existence by placing a statement in their books and records within a certain time. Rev. Proc. 99-17, § 5.03, 1999-1 C.B. at 504.

That is, election of the mark-to-market method *where no prior method existed* only requires the filing of a statement, and may be done without the consent of the Secretary. By way of contrast, an "old taxpayer" (like Mr. Marandola) *who has already adopted a method that he now wishes to change*, must obtain either the express or deemed consent of the Commissioner in keeping with the requirements of I.R.C. § 446 and the regulations thereunder.

Although I.R.C. § 475(f)(3) provides that the Secretary's consent is not required to make the mark-to-market election, the legislative history and subsequent judicial interpretation have made clear that the reason the Secretary's consent is not expressly required by statute is the fact that Congress intended that procedures be established which, if followed, would allow taxpayers to make the mark-to-market election with the *deemed* consent of the Secretary, by way of his delegate, the Commissioner. These procedures were established through the publication of Rev.

---

return for the year," and that the statement "must be attached to that return or to a request for an extension of time to file that return." 2006 WL 3725132 at *3. For this proposition, the Tax Court cited § 5.03 of Rev. Proc. 99-17, the only provision of Rev. Proc. 99-17 that applied to the tax years at issue in that case (*i.e.*, tax years 2000 and 2001, years for which the transition rules that apply in this case were no longer in effect).

Defendant's counsel forwarded a copy of the *Knish* opinion to plaintiff's counsel on January 18, 2007.

Proc. 99-17. Because (as discussed in our opening brief at 10-17) Mr. Marandola did not follow the procedures set forth in the provisions of Rev. Proc. 99-17 that apply to the years in suit, he did not obtain the Secretary's deemed consent to change to the mark-to-market method of accounting.

2. Plaintiff is barred from seeking relief under Treasury Regulations § 301.9100 by the substantial variance rule

Mr. Marandola argues that he is not barred from seeking relief under Treas. Reg. § 301.9100 ("§ 9100 relief") because "as a result of filing amended returns and the subsequent examination of the returns, the IRS was on notice regarding the request of relief from a late election by the Plaintiff and his representatives (tax preparers)." (Plt. Opp. at 2.) In other words, his contention is that the mere filing of an amended return impliedly encompasses within that return whatever grounds might later appear to justify a refund, even though the grounds are not expressed in the amended return.

The mere filing of an amended return and subsequent defense of that return upon examination does not, however, "set forth in detail each ground upon which a refund is claimed," as required by Treas. Reg. § 301.6402-2(b)(1). *See USA Choice Internet Service, LLC v. United States*, 73 Fed. Cl. 780, 788-90 (2006) (citing *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000); *Ottawa Silica Co. v. United States*, 699 F.2d 1124, 1138-40 (Fed. Cir. 1983)); *Union Pac. R.R. v. United States*, 389 F.2d 437, 442 (Ct. Cl. 1968)), discussed in our opening brief at 19. Mr. Marandola did not seek a private letter ruling requesting § 9100 relief during the examination of his amended 1996 - 1999 returns. Nor did he request § 9100 relief through administrative appeal upon the conclusion of the examination. In fact, as noted in our opening brief, the first indication that Mr. Marandola intended to invoke the Commissioner's

discretion to allow the late mark-to-market election, appears in Mr. Marandola's brief in support of his motion for summary judgment. (Plt. Op. Br., part IV). Thus, the Commissioner was not apprised of the grounds upon which Mr. Marandola now claims that he was entitled to use the mark-to-market method. He is thus barred from requesting that this Court address those grounds.

3. Even if Mr. Marandola's claim were not barred by the substantial variance rule, he is not eligible for relief under Treasury Regulation § 301.9100

Mr. Marandola misapprehends our argument on this point. We contend that, even if his § 9100 claim were not barred by the substantial variance rule, Mr. Marandola is not eligible for § 9100 relief because he can not meet the good-faith and non-prejudicial requirements of Treas. Reg. § 301.9100-3(a). Mr. Marandola benefitted from hindsight in requesting § 9100 relief. As a result, the regulations provide that he is deemed to have not acted in good faith. Treas. Reg. § 301.9100-3(b)(3)(iii). Under these regulations, Mr. Marandola's request is also "per se" prejudicial to the interests of the Government because it would require a § 481(a) adjustment. Treas. Reg. § 301.9100-3(c)(2)(ii).

The Tax Court's recent decision in *Knish* also involved a taxpayer seeking § 9100 relief to make a late mark-to-market election. In ruling against the taxpayer, the Tax Court turned to Treas. Reg. § 301.9100-3, which authorizes the Commissioner to allow late elections, "if the taxpayer can show that the taxpayer acted reasonably and in good faith and the grant of relief will not prejudice the interests of the Government." Treas. Reg. § 301.9100-3(a). The Tax Court noted that "[a] taxpayer is deemed not to have acted reasonably and in good faith if the taxpayer uses hindsight in requesting relief." *Knish* at 12. "The Commissioner ordinarily will deny relief if specific facts have changed since the due date for making the election that make the

election advantageous to a taxpayer." *Id.* The court then concluded: "A taxpayer attempting to make a mark-to-market election years after it is due (while continuing to trade in the meantime) in an attempt to convert capital losses to ordinary losses is a classic example of a taxpayer seeking to use hindsight." *Id*. at 13 (citing *Vines v. Commissioner*, 126 T.C. 279, 293-294 (2006), *Lehrer v. Commissioner,* T.C. Memo. 2005-167 (2005), and *Acar v. United States*, 98 AFTR 2d 2006-6296, 2006-2 USTC par 50,529 (N.D. Cal. 2006)). As demonstrated in our opening brief, Mr. Marandola's attempt to convert capital losses to ordinary losses is yet another "classic example of a taxpayer seeking to use hindsight."

The regulations further prohibit granting § 9100 relief to Mr. Marandola because the filing deadline he missed relates to an accounting method regulatory election that requires an I.R.C. § 481(a) adjustment. Under these circumstances, the relief sought is deemed "per se" prejudicial to the interests of the Government. *Inter alia*, Treas. Reg. § 301.9100-3(c)(2) provides that:

> The interests of the Government are deemed to be prejudiced, except in unusual and compelling circumstances, if the accounting method regulatory election for which relief is requested . . .
>
> (ii) Requires an adjustment under [I.R.C.] section 481(a) (or would require an adjustment under section 481(a) if the taxpayer changed to the method of accounting for which relief is requested in a taxable year subsequent to the taxable year the election should have been made).

In his Opposition, Mr. Marandola assumes incorrectly that we are contending that the "prejudice" contemplated by the regulation arises in this case from the fact that he recomputed his 1996-1999 tax liabilities on his amended returns to include the full § 481 adjustment in one year, rather than spread over four years, as was required by Rev. Proc. 99-17, § 6.03, during the

years in issue.[4] The regulation does not distinguish between I.R.C. § 481(a) adjustments made over one year or four years. It simply provides that any request for § 9100 relief involving a late election to employ a method of accounting that requires an adjustment under I.R.C. § 481(a) is deemed prejudicial to the interests of the Government absent a showing of unusual and compelling circumstances.[5]

---

[4]Section 6.03 requires that any § 481(a) adjustment be taken into account over a four-year period beginning with the year of election in accordance with § 5.04 of Rev. Proc. 98-60, 1999-2 C.B. 761. Rev. Proc. 98-60 has since been superceded. Now taxpayers can elect to claim a § 481(a) adjustment in full, either in the year of the election (one year), or ratably over a four-year period beginning with the year of election. *See* Rev. Proc. 2002-9, 2002-1 C.B. 327, as modified by Rev. Proc. 2002-19, 2002-1 C.B. 696, and Rev. Proc. 2002-54, 2002-2 C.B. 432.

[5]An example of such unusual and compelling circumstances is found in *Vines v. Commissioner*, 126 T.C. 279 (2006), 2006 WL 11280960, discussed in our opening brief (at 26). In *Vines*, the Tax Court held that the taxpayer was entitled to § 9100 relief, even though he had missed the deadline for making the mark-to-market election under I.R.C. § 475(f). The Tax Court was influenced by the fact that the taxpayer had not engaged in trading activity during the three month period between the date on which he should have made the election and the date on which he requested § 9100 relief through a private letter ruling. The court concluded § 9100 relief was appropriate, because, in the absence of any interim trading activity, there was no way the taxpayer could have benefitted from hindsight.

As demonstrated in our opening brief, Schedule D of Mr. Marandola's 1996 - 1999 original and amended tax returns reveal that he engaged in trading activity during the period between the date any election might have been timely, and the date on which he claims to have made a retroactive mark-to-market election.

Mr. Marandola also alleges erroneously that he met the procedural requirements of Treas. Reg. § 301.9100-3(e), which requires that the taxpayer "submit a detailed affidavit describing the events that led to the failure to make the regulatory election and to the discovery of the failure," and that the affidavit be signed under penalties of perjury. Treas. Reg. § 301.9100-3(e)(2). Mr. Marandola merely argues, citing no authority, that "[a]mended returns are filed under penalties of perjury and separate affidavits are not required." (Plt. Opp. at 3). Even assuming that an amended return may serve as a substitute for the sworn affidavit required by Treas. Reg. § 301.9100-3(e)(2) (it may not), Mr. Marandola's amended returns do not provide the detailed description of the events that led to the failure to make a timely mark-to-market election, and the discovery of the failure to make the election, required by Treas. Reg. § 301.9100-3(e).

4. Mr. Marandola failed to file the statement or the Form 3115 required by Rev. Proc. 99-17

Mr. Marandola alleges that he met the requirements for making the mark-to-market election on the amended returns he filed in 2000. His contention that "the statement required by Sections 5.04 of Rev. Proc. 99-17, describing the election, the year for which it was made and the trade or business to which it applies is contained in the amended returns" (Plt. Opp. at 3) is not supported by any evidence in the record, however.[6]

Assuming, *arguendo*, that Mr. Marandola had attached election statements to the amended returns he filed in January 2000, he still would not have satisfied the filing requirements prescribed by Rev. Proc. 99-17. In addition to the statement described in § 5.04, § 6.02 of the revenue procedure requires taxpayers to also file Form 3115, Application for Change in Accounting Method, with the IRS national office, along with the timely-filed return or request for an extension, for the year immediately preceding the year of election. There is no evidence that Mr. Marandola ever filed a Form 3115.

CONCLUSION

For the reasons stated herein and in our opening brief, defendant is entitled to judgment

[6]Defendant notes that a statement purporting to make a mark-to-market election for the 2000 tax year was filed with Mr. Marandola's amended 1999 return on November 21, 2000. ((Stip. ¶ 22, Stip Ex. 13 Part 2 at X-33). Since the tax years at issue in the present case are 1996 - 1999, the 2000 tax year is irrelevant to Mr. Marandola's claim to have elected the mark-to-market method in 1997. Furthermore, even if the 2000 tax year were at issue, Rev. Proc. 99-17 § 5.03 requires that the statement electing the method for 2000 would have had to be filed with Mr. Marandola's timely-filed 1999 return, or with a timely-filed request for an extension to file his 1999 return. In either case, the statement would have had to have been filed by April 17, 2000, the original due date for Mr. Marandola's 1999 return (April 15, 2000 fell on a Saturday). Instead, Mr. Marandola filed his statement for the 2000 tax year on November 21, 2000, more than eight months late.

as a matter of law, and the complaint should be dismissed, with costs assessed against the plaintiff.

Respectfully submitted,

February 13, 2007

s/ Jeffrey R. Malo
JEFFREY R. MALO
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-6507

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Chief, Court of Federal Claims Section
MARY M. ABATE
Assistant Chief

February 13, 2007

s/ Mary M. Abate
Of Counsel

Attorneys for Defendant