# In the United States Court of Federal Claims

No. 05-252T

(Filed: April 4, 2006)

* * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| **EDWARD MARANDOLA, JR., and CARMEN MARANDOLA,**<br><br>Plaintiffs,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant. | Trial on stipulated facts in a tax refund suit; trader in securities; 26 U.S.C. § 475(f); mark-to-market tax accounting method; attempted change of proper accounting methods; Rev. Proc. 99-17; 26 U.S.C. § 7422(a); "substantial variance" rule; Treas. Reg. § 301.9100-3 |

* * * * * * * * * * * * * * * * * * * * * * * * *

Charles J. Reilly, Providence, RI, for plaintiffs.

Jeffrey R. Malo, Trial Attorney, Tax Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Eileen J. O'Connor, Assistant Attorney General, and David Gustafson, Chief, and Mary M. Abate, Assistant Chief, Court of Federal Claims Section, Tax Division, United States Department of Justice, Washington, D.C.

**OPINION AND ORDER**

LETTOW, Judge.

Edward and Carmen Marandola ("the taxpayers") seek a refund for federal income taxes they paid attributable to tax years 1996 through 1999. By amending income tax returns for tax years 1997 through 1999, Mr. Marandola attempted to elect a tax accounting method available to a "trader in securities." *See* 26 U.S.C. ("I.R.C.") § 475(f). The changes Mr. Marandola sought to make, if allowed, would generate refunds of taxes paid by Mr. Marandola for 1997 through 1999 and would create a net operating loss which, when "carried back" to the 1996 tax year, *see* I.R.C. § 172, would have caused a refund to be due the Marandolas for 1996 as well. The Internal Revenue Service ("the IRS" or "the government") rejected the changes Mr. Marandola proposed.

The parties have entered Stipulations of Fact and have each sought judgment based, in effect, on a trial upon stipulated fact. A hearing was held on February 27, 2006. This case is ready for disposition.

For reasons that follow, the government's motion for judgment is granted.

## FACTS

Mr. and Mrs. Marandola filed their 1996 income tax return as married taxpayers filing jointly, and they reported taxable income for that year in the amount of $4,395,281. Stipulation ("Stip.") ¶¶ 2, 3; JX 1 (Form 1040, U.S. Individual Income Tax Return (1996) ("Original 1996 Form 1040")).[1] During 1997, the Marandolas divorced. Compl. ¶ 8; Def.'s Cross-Mot. at 3. Thereafter, for tax years 1997, 1998, and 1999, Mr. Marandola filed his tax returns as a single taxpayer. Stip. ¶¶ 7, 13, 19; *see* JX 5 (Form 1040, U.S. Individual Income Tax Return (1997)) ("Original 1997 Form 1040"); JX 8 (Form 1040, U.S. Individual Income Tax Return (1998)) ("Original 1998 Form 1040"); JX 11 (Form 1040, U.S. Individual Income Tax Return (1999)) ("Original 1999 Form 1040").

On August 5, 1997, the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, 111 Stat. 788, became law, amending the Internal Revenue Code to allow a "trader in securities" to make an election to use the so-called "mark to market" accounting method to determine income and losses attributable to qualified securities. Pub. L. No. 105-34, §1001(b), 111 Stat. at 906-07 (codified as amended at I.R.C. § 475(f)). Under this method, the electing trader in securities counts as gains or losses for federal income tax purposes the net change in market value of securities during a tax year even though the trader does not sell or otherwise dispose of the securities during the tax year. I.R.C. § 475(f). This statutory change provided an exception to the tax code's general rule that gains or losses only are recognized for federal income tax purposes upon the occurrence of a realization event. *See* I.R.C. § 1001(a) ("[t]he gain from the sale or other disposition of property"); *Palmer v. Commissioner*, 302 U.S. 63, 69 (1937) ("Profit, if any, accrues to [a taxpayer] only upon sale or disposition."). Additionally, the gains or losses attributable to the securities covered by the mark-to-market provision are "treated as ordinary income or loss." I.R.C. § 475(d)(3); *see* I.R.C. § 475(f)(1)(D) (referring to Subsection 475(d)). Thus, the treatment the Internal Revenue Code generally affords gains and losses arising from the sale or disposition of capital assets is not applicable to securities subject to a mark-to-market election under I.R.C. § 475(f). *See* I.R.C. §§ 1(h) (establishing a preferential lower tax rate applicable to net long-term capital gains realized by individuals), 1211(b)(1) (limiting to $3,000 the maximum net capital loss allowed in any tax year to an individual taxpayer), 1212(b)(1) (providing that an individual's "net capital loss" for a given tax year shall be carried over to "the succeeding taxable year"), 1221 (defining a capital asset); *see also* Boris I. Bittker and Lawrence Lokken, *Federal Taxation of Income, Estates & Gifts*, ¶ 46.2.6 (current through 2006) (For an individual, "[u]nused capital loss carryovers expire on the taxpayer's death.").

[1]"JX __" refers to the joint exhibits submitted by the parties.

The government concedes that Mr. Marandola was a trader in securities who, for tax years 1997, 1998, and 1999, was eligible to elect, pursuant to I.R.C. § 475(f), to use the mark-to-market method of accounting set forth in I.R.C. § 475(f). Stip. ¶ 1. However, when Mr. Marandola initially filed his tax returns for 1997, 1998, and 1999, he did not make an election under I.R.C. § 475(f), nor did the calculation of his tax liability on those tax returns reflect the application of I.R.C. § 475(f). Stip. ¶¶ 9, 15, 21; JX 5 (Original 1997 Form 1040); JX 8 (Original 1998 Form 1040); JX 11 (Original 1999 Form 1040). On these tax returns, as originally filed, Mr. Marandola reported only the gains and losses attributable to *actual* sales or other dispositions of the securities at issue. *See* JX 5 (Original 1997 Form 1040) at Sch. D (securities transactions yielding a net short-term capital loss of $2,684,668 and a net long-term capital gain of $1,349,567); JX 8 (Original 1998 Form 1040) at Sch. D (securities transactions yielding a net short-term capital loss of $2,806,879); JX 11 (Original 1999 Form 1040) at Sch. D (securities transactions yielding a net short-term capital loss of $303,375).[2]

When Mr. Marandola filed his original tax return for 1997 on October 17, 1998, Stip. ¶ 7, the IRS had not yet provided guidance as to the time and manner in which a taxpayer should make an election pursuant to I.R.C. § 475(f). Pls.' Mot. at 9. On January 28, 1999, the Treasury Department issued a notice of proposed rulemaking and notice of public hearing, Mark-to-Market Accounting for Dealers in Commodities and Traders in Securities or Commodities, 64 Fed. Reg. 4374 (Jan. 28, 1999), by which notice Treasury proposed to amend its regulations to add §1.475(f)-1(a) ("An election under section 475(f)(1) or (2) must be made in the time and manner prescribed by the Commissioner."). *Id.* at 4378.[3] Eleven days later, on February 8, 1999, the IRS made available to the public, and, on February 16, 1999, the IRS published Revenue Procedure ("Rev. Proc.") 99-17, 1999-7 I.R.B. 52, which stated as its purpose, "provid[ing] the exclusive procedure for dealers in commodities and traders in securities or commodities to make an election to use the mark-to-market method of accounting under § 475(e) or (f) of the Internal Revenue Code." Rev. Proc. 99-17, §§ 1, 7.[4] Mr. Marandola filed his original tax return for 1998 on October 19, 1999. Stip. ¶ 13.

---

[2]In addition to these capital gains and losses attributable to the securities transactions, Mr. Marandola also reported short-term capital loss carryovers from previous years, net long-term capital gains attributable to the activity of pass-through entities, and gains treated as capital gains under I.R.C. § 1231. *See* JX 5 (Original 1997 Form 1040) at Sch. D; JX 8 (Original 1998 Form 1040) at Sch. D; JX 11 (Original 1999 Form 1040) at Sch. D.

[3]As of the date of this opinion, the Treasury Department had not yet issued final regulations implementing I.R.C. § 475(f).

[4]Subsequently, also in 1999, Rev. Proc. 99-17 was superseded in a respect not pertinent to this case by Rev. Proc. 99-49, 1999-52 I.R.B. 725 (superseding Rev. Proc. 99-17 regarding the net adjustments a taxpayer must make under I.R.C. § 481 following a change in accounting method).

On January 24, 2000, Mr. Marandola filed amended tax returns for tax years 1997 and 1998. Stip. ¶¶ 10, 16; *see* JX 7 (Form 1040X, Amended U.S. Individual Income Tax Return (1997)) ("Amended 1997 Form 1040X"); JX 10 (Form 1040X, Amended U.S. Individual Income Tax Return (1998)) ("Amended 1998 Form 1040X"). Mr. Marandola explained that the amended returns were being filed "to report, under the mark to market regime, all gains or losses from the sale of securities during the taxable year or, if held on the last business day of the taxable year, on the deemed sale of those securities being so held." JX 7 (Amended 1997 Form 1040X) at Part II; JX 10 (Amended 1998 Form 1040X) at Part II. On the amended returns, Mr. Marandola removed the securities transactions from the schedule of capital gains and losses and instead reported his securities trading as a trade or business, treating the income and losses pertaining to the securities as ordinary in character. *See* JX 7 (Amended 1997 Form 1040X) at Sch. C, D; JX 10 (Amended 1998 Form 1040 X) at Sch. C, D. Mr. Marandola's calculation combined the amounts originally reported as capital gains and losses relating to securities transactions and also included a mark-to-market adjustment. JX 7 (Amended 1997 Form 1040X) at Sch. C, D; JX 10 (Amended 1998 Form 1040X) at Sch. C, D.[5] Mr. Marandola also treated margin interest expenses as being incurred in his securities trading trade or business, increasing the reported net loss from securities trading and reducing the disallowed investment expense carryforward amount from that which was originally reported. *Compare* JX 5 (Original 1997 Form 1040) at Form 4952, and JX 8 (Original 1998 Form 1040) at Form 4952, *with* JX 7 (Amended 1997 Form 1040X) at Sch. A, C, Form 4952, and JX 10 (Amended 1998 Form 1040X) at Sch. A, C, Form 4952. *See also* I.R.C. § 163(d)(2) (providing for carryforward of disallowed investment interest expenses).

Mr. Marandola's amended tax return for 1998 showed a net operating loss of $2,337,767. *See* JX10 (Amended 1998 Form 1040X) at Net Operating Loss Schedule. On January 24, 2000, the same day that Mr. Marandola filed amended 1997 and 1998 tax returns, Mr. and Mrs. Marandola filed an amended tax return for 1996 applying this net operating loss to their 1996 tax year. Stip. ¶ 5; *see* JX 3 (Form 1040X, Amended U.S. Individual Income Tax Return (1996)) ("Amended 1996 Form 1040X"); *see also* I.R.C. § 172 (allowing net operating loss carrybacks).

---

[5]It appears that the mark-to-market adjustment reported for 1998 only took into consideration fluctuations in value for securities still held by Mr. Marandola on December 31, 1998. The gains and losses on those securities that were actually sold or otherwise disposed in 1998 were unadjusted on the amended return from the amount originally reported. Thus, the total gain or loss attributable to trading securities may have been misstated on the Amended 1998 Form 1040X even under the mark-to-market method because the cost basis for securities that were sold in 1998 was not adjusted for market fluctuations recognized as gains and losses on the Amended 1997 Form 1040X. *See* JX 10 (Amended 1998 Form 1040X), Schedule of Mark to Market Valuations; JX 7 (Amended 1997 Form 1040X), Sch. C; *cf.* I.R.C. § 475(f)(1)(A) ("Proper adjustment shall be made in the amount of any gain or loss subsequently realized for gain or loss taken into account under [I.R.C. § 475(f)(1)(A)(i) and (ii)].").

On April 15, 2000, Mr. Marandola filed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return (1999), requesting an extension of time within which to file his tax return for 1999. *See* JX 12 (Form 4340, Certificate of Assessments, Payments, & Other Specified Matters for 1999 tax year); JX 11 (Original 1999 Form 1040). With this extension request, Mr. Marandola attached the following statement: "The following election is being made under provisions of Revenue Procedure 99-17[:] [t]he taxpayer elects to use the mark to market accounting procedure, as a securities trader, as provided under Internal Revenue Code Section 475, for the year 2000." *See* JX 11 (Original 1999 Form 1040), Attach. to Form 4868.

Mr. Marandola filed his tax return for 1999 on October 19, 2000. Stip. ¶ 19; *see* JX 11 (Original 1999 Form 1040). Notably, however, this return "did not include any statement that [Mr. Marandola] was making an election under [I.R.C.] § 475(f) for his 1999 tax year" and "did not reflect the application of [I.R.C.] § 475 in the calculation of his tax liability." Stip. ¶ 21. On this return, Mr. Marandola reported gains and losses attributable to actual sales or other dispositions of securities. *See* JX 11 (Original 1999 Form 1040) at Sch. D (security transactions yielding a net short-term capital loss of $303,375).[6] Mr. Marandola filed an amended tax return for 1999 on November 21, 2000. Stip. ¶ 22; *see* JX 13 (Form 1040X, Amended U.S. Individual Income Tax Return (1999)) ("Amended 1999 Form 1040X"). The explanation Mr. Marandola provided to the IRS with the amended tax return was that changes were being offered "to report, under the mark to market regime, all gains or losses from sale of securities during the taxable year or if held on the last business day of the taxable year, on the deemed sale of those securities being so held." JX 13 (Amended 1999 Form 1040X) at Part II. As with the amended returns for 1996 and 1997, Mr. Marandola reported his securities trading as a trade or business, treating the income and losses pertaining to the securities as ordinary in character, and not including security transactions on the schedule of capital gains and losses as they had been reported on the Original 1999 Form 1040. *Compare* JX 13 (Amended 1999 Form 1040X) at Sch. C, Stmt. 12 (reporting losses from securities trading of $380,297, comprising the $303,375 originally reported as a net short-term capital loss on Original 1999 Form 1040 and a net mark-to-market adjustment of $76,922 for the decline in net market value of securities held), *with* JX 11 (Original 1999 Form 1040) at Sch. D (securities transactions yielding net short-term capital loss of $303,375).

---

[6]In calculating the net short term capital loss reported on the Original 1999 Form 1040, Mr. Marandola adjusted the cost basis for at least some of the securities sold in 1999 to reflect the mark-to-market adjustment claimed for those securities on his Amended 1998 Form 1040X. *See, e.g.,* JX 11 (Original 1999 Form 1040) at Sch. D, Stmt. 14, Capital Gains Report for Nutmeg Sec. Ltd. (decreasing the cost basis by $463,616, converting what would have been a $349,713 net loss computed without the 1998 mark-to-market adjustment to a $113,903 net gain); JX 10 (Amended 1998 Form 1040X) at Sch. D, Sch. of Mark-to-Market Valuations (reporting a net loss of $463,616 as the mark-to-market adjustment attributable to securities held through Nutmeg Securities). This adjustment, though, had no effect on the total tax assessed on the Original 1999 Form 1040 because Mr. Marandola's total deduction for net capital losses was limited to $3,000. JX 11 (Original 1999 Form 1040); *see* I.R.C. § 1211(b)(1).

By August 26, 2002, Mr. and Mrs. Marandola had paid the full tax liability reported on their Original 1996 Form 1040. *See* Stip. ¶ 3; JX 2 (Form 4340, Certificate of Assessments, Payments, & Other Specified Matters for 1996 tax year). By January 2, 2004, Mr. Marandola had paid the full tax liability reported on his Original 1997 Form 1040, Original 1998 Form 1040, and Original 1999 Form 1040. *See* Stip. ¶¶ 8, 14, 20; JX 6 (Form 4340, Certificate of Assessments, Payments, & Other Specified Matters for 1997 tax year); JX 9 (Form 4340, Certificate of Assessments, Payments, & Other Specified Matters for 1998 tax year); JX 12 (Form 4340, Certificate of Assessments, Payments, & Other Specified Matters for 1999 tax year).

On September 30, 2004, the IRS sent the taxpayers letters disallowing the changes on their 1996, 1997, 1998, and 1999 amended returns attributable to the mark-to-market method under I.R.C. § 475(f). Compl. at Ex. A (Letter from Frank Fiore, Team Manager, IRS, to Mr. Marandola (Sept. 30, 2004)) (disallowing claims presented by the amended 1997, 1998, and 1999 tax returns on the grounds that "[Mr. Marandola] did not make a valid mark to market election under IRC [Subs]ection 475(f) and Revenue Procedure 99-17"); JX 4 (Letter from Fiore to Mr. and Mrs. Marandola (Sept. 30, 2004)) (disallowing the net operating loss deduction claimed on the Amended 1996 Form 1040X because the net operating loss reported on the Amended 1998 Form 1040X had been rejected).[7]

On February 25, 2005, Mr. and Mrs. Marandola filed their complaint in this court seeking a refund of taxes paid in the amount of $1,946,497. Compl. at 4-5.[8]

**Jurisdiction**

Jurisdiction must be established as a threshold matter before the court may proceed with the merits of this or any other action. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89

[7]The IRS did accept some of the changes Mr. and Mrs. Marandola submitted on their Amended 1996 Form 1040X. On the amended return, the Marandolas had also made changes to "report pass[-]through items . . . not included in [the] original return." JX 3 (Amended 1996 Form 1040X) at Part II, Sch. E., Stmt. 20; JX 4 (Letter from Fiore to Mr. & Mrs. Marandola (Sept. 30, 2004)).

[8]This amount is the sum of $953,528 claimed for 1996, $615,190 claimed for 1997, $271,295 claimed for 1998, and $106,484 claimed for 1999. *See* Compl. ¶¶ 7, 13; *see also* JX 4 (Letter from Fiore to Mr. and Mrs. Marandola (Sept. 30, 2004)) (disallowing all but $8,419 of the $961,947 claimed for 1996); Compl. at Ex. A (Letter from Fiore to Mr. Marandola (Sept. 30, 2004)) (disallowing claims of $615,190 for 1997, $271,295 for 1998, and $106,484 for 1999); JX 3 (Amended 1996 Form 1040X) (showing net decrease in tax of $961,947); JX 7 (Amended 1997 Form 1040X) (showing net decrease in tax of $615,190); JX 10 (Amended 1998 Form 1040X) (showing net decrease in tax of $271,295); JX 13 (Amended 1999 Form 1040X) (showing net decrease in tax of $106,484).

(1998). The plaintiff bears the burden of establishing that the court has subject matter jurisdiction over its claim. *McNutt v. General Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

All federal courts are courts of limited jurisdiction. *See RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998). Through the Tucker Act, Congress has conferred on this court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). A suit seeking a refund of taxes paid is included within this grant. *See Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007 (Ct. Cl. 1967), *abrogated in part on other grounds by Malone v. United States*, 849 F.2d 1441, 1444-45 (Fed. Cir. 1988). *Cf.* 28 U.S.C. § 1346(a)(1) (providing that district courts shall have jurisdiction concurrent with that of this court to consider tax-refund suits). With very limited exceptions, tax cases in this court and district courts are purely refund suits: "[w]here the principal tax deficiency has not been paid in full, such tax refund claims are dismissed." *Shore v. United States*, 9 F.3d 1524, 1526 (Fed. Cir. 1993).

To pursue a tax refund suit, a plaintiff must first file a tax refund claim with the IRS. I.R.C. § 7422(a).[9] The claim filed with the IRS must "set forth in detail each ground upon which a . . . refund is claimed and facts sufficient to apprise the Commissioner [of Internal Revenue] of the exact basis thereof." Treas. Reg. § 301.6402-2(b)(1).[10] "Courts have long interpreted [I.R.C.] § 7422(a) and Treasury Reg. § 301.6402-2(b)(1) as stating a 'substantial variance' rule which bars a taxpayer from presenting claims in a tax refund suit that 'substantially vary' the legal theories and factual bases set forth in the tax refund claim presented to the IRS." *Lockheed Martin Corp. v. United States*, 210 F.3d 1366, 1371 (Fed. Cir. 2000) (citing *Cook v. United States*, 599 F.2d 400, 406 (Ct. Cl. 1979)). In short, to be addressed by a court, both the legal and

---

[9]Section 7422(a) provides:

> No suit or proceeding shall be maintained in any court for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected, or of any penalty claimed to have been collected without authority, or of any sum alleged to have been excessive or in any manner wrongfully collected, until a claim for refund or credit has been duly filed with the Secretary [of the Treasury], according to the provisions of law in that regard, and the regulations of the Secretary established in pursuance thereof.

I.R.C. § 7422(a).

[10]This regulation specifies that "[n]o refund . . . will be allowed . . . except upon one or more of the grounds set forth in a claim [made to the Internal Revenue Service]. . . . A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit." Treas. Reg. § 301.6402-2(b)(1).

factual grounds for a refund claim must first have been presented by the taxpayer to the IRS. *See USA Choice Internet Service, LLC v. United States*, 73 Fed. Cl. 780, 788-89 (2006) (applying *Lockheed Martin*, 210 F.3d at 1371). A "legal theory not expressly or impliedly contained in the application for refund cannot be considered by a court in which a suit for refund is subsequently initiated." *Lockheed Martin*, 210 F.3d at 1371 (quoting *Burlington N., Inc. v. United States*, 684 F.2d 866, 868 (Ct. Cl. 1982)). However, as long as the "claim fairly apprises the Commissioner of the ground on which recovery is sought, then the claim is adequate for the purposes of bringing suit under [Sub]section 7422(a)." *Burlington N.*, 684 F.2d at 869. The taxpayer bears the burden of establishing that it sufficiently apprised the IRS of the same grounds and facts on which the taxpayer bases its claim before the court. *See USA Choice*, 73 Fed. Cl. at 788-89.

## Standard for Decision

The parties' cross-motions are predicated upon a joint stipulation of facts. *See* Pls.' Mot. at 1 ("[T]he facts in this case . . . have been stipulated to by the plaintiffs and the defendant."); Def.'s Cross-Mot. at 2-5; Stip.; *see also* Rule 56(h)(3) of the Rules of the United States Court of Federal Claims (Where parties have filed "a comprehensive stipulation of all of the material facts upon which they intend to rely[,] . . . the court will, absent persuasive reason to the contrary, deem the material facts claimed and adequately supported by the moving party to be established, except to the extent that such material facts are controverted by affidavit or other written or oral evidence."). The parties agree it is appropriate for the court to treat the case as a trial on stipulated facts. Hr'g Tr. 2:24 to 3:1; 28:2-7 (Feb. 27, 2007). "In rendering judgment based on stipulated facts, [this court] of necessity draws – and bases legal conclusions on – factual inferences." *Saab Cars USA, Inc. v. United States*, 434 F.3d 1359, 1372 (Fed. Cir. 2006).

Once jurisdiction is established, "[a] tax refund suit is a *de novo* proceeding, in which the plaintiff bears the burden of proof, including both the burden of going forward and the burden of persuasion." *Sara Lee Corp. v. United States*, 29 Fed. Cl. 330, 334 (1993) (citing *Helvering v. Taylor*, 293 U.S. 507, 515 (1935) (burden of proof)); *see also Lewis v. Reynolds*, 284 U.S. 281, 283 (1932), *modified by* 284 U.S. 599 (1932) (burden of proof); *Rockwell v. Commissioner*, 512 F.2d 882, 885 (9th Cir. 1975) (Duniway, J.) (burden of proof); *George E. Warren Corp. v. United States*, 141 F.Supp. 935, 940 (Ct. Cl. 1956) (*de novo*); *Snap-On Tools, Inc. v. United States*, 26 Cl. Ct. 1045, 1055 (1992) (burden of proof). "A plaintiff who is claiming a tax refund must prove [its] case by a preponderance of the evidence." *Ebert v. United States*, 66 Fed. Cl. 287, 291 (2005) (citing *Cook v. United States*, 46 Fed. Cl. 110, 116 (2000)).

## ANALYSIS

Mr. and Mrs. Marandola have paid their federal income taxes for tax years 1996 through 1999, and they unsuccessfully requested refunds of those taxes in reliance on the mark-to-market regime available to a trader in securities for tax years 1997 through 1999. They have accordingly satisfied the jurisdictional prerequisites for raising their claim in this court that Mr. Marandola could make the securities-trader election under Subsection 475(f) as of right and that Mr. Marandola did so by filing amended tax returns for the pertinent years.

### A. *Change of Accounting Method*

The essence of Mr. and Mrs. Marandola's claim is that Mr. Marandola's submission of amended tax returns for 1997, 1998, and 1999 employing the mark-to-market method of accounting for securities transactions was an effective method of electing under Subsection 475(f) to use the mark-to-market method for those tax years and thereafter. Recognizing that he did not make the election within the time periods specified in Rev. Proc. 99-17, Mr. Marandola contends that those time limitations are "arbitrary" because they "supersede[] the three-year [s]tatute of [l]imitations for refund claims and assessments of deficiency as provided by the Internal Revenue Code." Pls.' Mot. at 6. Mr. Marandola assumes that he would have been entitled to make the desired accounting change by filing an amended return at any time prior to the expiration of the period of limitation on filing a claim with the IRS established by I.R.C. § 6511(a).

Mr. Marandola chose a problematic route to make the securities-trader election that was available under Section 475. "[N]o statutory provision expressly authorizes the filing of amended tax returns, and . . . the treatment of such amendments is within the discretion of the Commissioner" of Internal Revenue. *Western Co. of N. America v. United States*, 323 F.3d 1024, 1033 (Fed. Cir. 2003) (citing *Hillsboro Nat'l Bank v. Commissioner*, 460 U.S. 370, 380, n.10 (1983)); *see also Badaracco v. Commissioner*, 464 U.S. 386, 393 (1984) ("[T]he Internal Revenue Code does not explicitly provide either for a taxpayer's filing, or for the Commissioner's acceptance, of an amended return; instead, an amended return is a creature of administrative origin and grace."). The Commissioner's discretion with regard to accepting an amended return, though not unbounded, is broad. *See, e.g., Goldstone v. Commissioner*, 65 T.C. 113, 116 (1975).[11]

The parties stipulated that Mr. Marandola's original returns for 1997, 1998, and 1999 "did not reflect the application of [I.R.C.] § 475 in the calculation of his tax liability" and contained "nothing . . . which clearly demonstrated an intent to make the election provided in [I.R.C.] § 475(f)" for those tax years. Stip. ¶ 9; *accord id.* ¶¶ 15, 21. Only by way of the amended returns, each filed after the extended due dates for the original returns, did Mr. Marandola "first . . . s[eek] to elect to use the mark to market method" for the 1997 through 1999 tax years. Stip. ¶¶ 11, 17, 23. When a taxpayer submits an amended return after the date

---

[11]The Tax Court suggested that the circumstances in which a court might find that the Commissioner erroneously rejected an amended tax return include, or are limited to, the following:

> (1) The amended return was filed prior to the date prescribed for filing a return; (2) the taxpayer's treatment of the contested item in the amended return was not inconsistent with his treatment of that item in his original return; or (3) the taxpayer's treatment of the item in the original return was improper and the taxpayer elected one of several allowable alternatives in the amended return.

*Goldstone*, 65 T.C. at 116.

prescribed for filing the original return, the IRS generally is not required to accept the changes proffered by the taxpayer on that amended return insofar as the changes are attributable to a different accounting method than that used on the original return. *See Pacific Nat'l Co. v. Welch*, 304 U.S. 191, 192-95 (1938) (Where taxpayer "could have chosen either of two methods" and filed a tax return according to one of those methods, "[t]here is nothing to suggest that Congress intended to permit a taxpayer, after expiration of the time within which return is to be made, to have his tax liability computed and settled according to the other method."); *Diebold, Inc. v. United States*, 891 F.2d 1579, 1583 (Fed. Cir. 1989) (Taxpayers are prohibited "from unilaterally amending their tax returns simply because they have discovered that a different method of accounting yields a lower tax liability than the method they originally chose."); *Le Bolt & Co. v. United States*, 67 Ct. Cl. 422, 1929 WL 2500, *3 (1929) ("[W]here there are two methods of making an income-tax return, either one of which is legal and proper, and the taxpayer has made his return in accordance with one of these methods, then, if the return is accepted and taxes paid accordingly, the taxpayer [cannot] subsequently change to the other method of making a return and thereby become entitled to a refund."); *Mamula v. Commissioner*, 346 F.2d 1016, 1018 (9th Cir. 1965) (Barnes, J.) ("Once a taxpayer makes an election of one of two or more alternative methods of reporting income, he should not be permitted to convert, of his own volition, when it later becomes evident that he has not chosen the most advantageous method."); *but cf. Haggar Co. v. Helvering*, 308 U.S. 389, 392-93, 395 (1940) (finding improper the Commissioner's rejection of an amended return filed before the extended due date for the original tax return, by which amended return the taxpayer sought to alter its method of valuation for capital stock).[12]

By the Taxpayer Relief Act of 1997, Congress granted "a person who is engaged in a trade or business as a trader in securities" the ability to elect, "without the consent of the Secretary," to use the mark-to-market method for the "securit[ies] held in connection with such trade or business." Pub. L. No. 105-34, §1001(b), 111 Stat. at 906-07 (codified at I.R.C. § 475(f)).[13] The parties have stipulated that "[d]uring tax years 1997, 1998, and 1999,

---

[12]The Federal Circuit's precedents might not distinguish between amending a return to change from one proper method to another and amending a return to correct an impermissible method. *See Diebold*, 891 F.2d at 1583 ("*Even if* the chosen method of accounting caused a[n impermissible] mismatching of income and deductions, [the taxpayer] could not change it without first obtaining the Commissioner's consent.") (emphasis added). By contrast, *Mamula* allowed a taxpayer to correct an improper method of calculation. *See* 346 F.2d at 1019. This nuance is not raised here because it is undisputed that the realization-event-based accounting method for recognition employed in the Marandola's original returns was permissible.

[13]The text of the Taxpayer Relief Act of 1997 refers to "a taxpayer who *elects* under subsection (e) or (f) of section 475 of the Internal Revenue Code of 1986 (as added by this section [of the Taxpayer Relief Act of 1997]) *to change its method of accounting.*" § 1001(d)(4)(B), 111 Stat. at 908 (emphasis added). The government nonetheless urges that the statute be read to restrict a taxpayer's ability to elect unilaterally, without IRS consent, under Section 475(f) to adopt the mark-to-market method. As the government would have it, a

[Mr. Marandola] was a trader in securities who was eligible to elect, pursuant to [I.R.C.] § 475(f), to use the mark to market method of accounting set forth in § 475(f)." Stip. ¶ 1. Though Mr. Marandola ostensibly could have made an election under I.R.C. § 475(f) on his Original 1997 Form 1040, Original 1998 Form 1040, or Original 1999 Form 1040 to employ the mark-to-mark method for his securities trading activity, he did not. Instead he used, as Congress permitted him to, a realization-event-based method. "By reporting income . . . according to [a proper] method, [the taxpayer] made an election that is binding upon [him] and the commissioner." *Pacific Nat'l*, 304 U.S. at 194-95; *see also Mamula*, 346 F.2d at 1018 ("Either method could have been used; [the taxpayer] made his choice, and he and the Commissioner were bound by it."). Therefore, absent an exception to this rule or the consent of the IRS, Mr. Marandola could not change from a realization-event-based method of accounting for securities transactions, which method was used on his original tax returns, to the mark-to-market method by submitting amended tax returns after the extended due date for his original returns.

### B. *Rev. Proc. 99-17*

In Rev. Proc. 99-17, the IRS sought to prescribe "the exclusive procedure for dealers in commodities and traders in securities or commodities to make an election to use the mark-to-market method of accounting under § 475(e) or (f) of the Internal Revenue Code." Rev. Proc. 99-17, § 1.[14] The IRS gave its consent to change accounting methods if the election requirements

---

taxpayer might make an election as of right only "where no prior method existed" in a previous tax year. Def.'s Reply at 4. It would still require a taxpayer "who has already adopted a method [in a previous year, including a pre-enactment year,] . . . [to] obtain either the express or deemed consent of the Commissioner" to elect to change its method of accounting. *Id*. This question of statutory interpretation need not be resolved in this case because Mr. Marandola did not attempt to make the election either on his original returns or on amended returns filed before the extended due date of the original returns.

[14]The tax regulations place a Revenue Procedure in the same general legal neighborhood as a Revenue Ruling. *See* Treas. Reg. § 601.601(d)(2) ("Objectives and standards for publication of Revenue Rulings and Revenue Procedures in the Internal Revenue Bulletin"). Revenue Procedures are issued by the Commissioner of the IRS without need of approval from the Secretary of the Treasury. The tax regulations define a "Revenue Procedure" as "a statement of procedure that affects the rights or duties of taxpayers or other members of the public under the [Internal Revenue] Code and related statutes or information that, although not necessarily affecting the rights and duties of the public, should be a matter of public knowledge." Treas. Reg. § 601.601(d)(2)(i)(*b*). This somewhat obtuse definition and the relatively divergent use of Revenue Procedures by the IRS have led to some uncertainty on the part of courts as to the role of Revenue Procedures in administering the federal tax laws. They are not equivalent to public rules that have the force and effect of law. *See Estate of Shapiro v. Commissioner*, 111 F.3d 1010, 1017 (2d Cir. 1997) (citing *Estate of Jones v. Commissioner*, 795 F.2d 566, 571 (6th Cir. 1986) ("the I.R.S.'s Revenue Procedures are directory not mandatory")). Nonetheless, because

set out in the Procedure were followed. *Id.* § 6.01. Those requirements were different for each of the three years for which Mr. Marandola sought to file amended tax returns. For 1997, the year of enactment of Section 475(f),[15] the taxpayer was required by the Procedure to either:

> (1) *have properly reflected the application of § 475* (including any required § 481(a) adjustment) in the calculation of the taxpayer's tax liability *on its original federal income tax return* for the election year; *or*
>
> (2) *have* failed to properly reflect the application of § 475 (including any required § 481(a) adjustment) in the calculation of the taxpayer's tax liability on its original federal income tax return for the election year, but clearly *demonstrated on that return its intent to make the election for that year* (for example, by a statement on, or attachment to, the return), *and file an amended return for the election year on or before June 16, 1999, that properly reflects the application of § 475* (including any required § 481(a) adjustment).

---

they are issued with a degree of formality, they can, where they set out a persuasive rationale, be entitled to limited "*Skidmore* deference," akin to that accorded Revenue Rulings which exhibit thorough consideration, valid reasoning, and consistency with prior precedent. *See United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). *See also Federal Nat'l Mortgage Ass'n v. United States*, 379 F. 3d 1303, 1307-09 (Fed. Cir. 2004) (declining to accord a Revenue Procedure deference under *Skidmore* when the Procedure was not accompanied by any supporting rationale and addressed a new statute with no precedent in prior tax laws).

As an administrative pronouncement of procedure, a Revenue Procedure is more likely to carry some weight where it was issued in accord with a congressional direction to provide procedural guidance. *See Armco, Inc. v. Commissioner*, 88 T.C. 946, 957-58 (1987). Rev. Proc. 99-17 fits within this template, except that the statute contemplated that the Secretary of the Treasury would act by promulgating regulations. *See* I.R.C. § 475(f)(1)(A) ("The Secretary may provide by regulations for the application of this subparagraph at times other than the times provided in this subparagraph."), (g) ("The Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of this section.").

By contrast, I.R.C. § 7805(d) generally addresses rules and procedures for making elections and provides that "[e]xcept to the extent otherwise provided by this title, any election under this title shall be made at such time and in such manner as the Secretary shall provide." This statutory text resulted from Pub. L. No. 105-206, § 3704, 112 Stat. 685, 777 (July 22, 1998), which amended "Subsection d of [S]ection 7805 . . . by striking 'by regulations or forms,'" which phrase had preceded the word "prescribe."

[15]For Mr. Marandola, 1997 was, as the IRS described, "a taxable year for which the original federal income tax return was filed before March 18, 1999." Rev. Proc. 99-17, § 5.01.

*Id.* § 5.01(1), (2) (emphasis added). For 1998 and 1999, Rev. Proc. 99-17 provided no avenue for Mr. Marandola to file amended returns and make the mark-to-market election. For 1998, *i.e.*, for the "taxable year which begins before January 1, 1999, and for which the original federal income tax return is filed on or after March 18, 1999," *id.* § 5.02, "the taxpayer must make the election by attaching a statement that satisfies the requirements in section 5.04 of this revenue procedure to an original federal income tax return for the election year that is timely filed (including extensions)." *Id.* In turn, Section 5.04 specified that the requisite statement "must describe the election being made, the first taxable year for which the election is effective, and, in the case of an election under § 475(f), the trade or business for which the election is made." *Id.* § 5.04. For 1999, the taxpayer had to file the requisite statement of election not later than the due date without regard to extensions "for the taxable year immediately preceding the election year," either with the original return or with a request for an extension of time to file that return. *Id.* § 5.03 ("Elections effective for a taxable year beginning on or after January 1, 1999.").

Mr. Marandola's amended returns for 1997, 1998, and 1999 were filed after June 16, 1999, Stip. ¶¶ 10, 16, 22, and thus they were untimely under Rev. Proc. 99-17. Mr. Marandola concedes that his original tax returns for those years did not demonstrate the requisite intent to make the election under Section 475(f). Stip. ¶¶ 9, 15, 21. Accordingly, Rev. Proc. 99-17 does not provide an avenue for the IRS's consent for Mr. Marandola to change his accounting method.

### C. *Delay in Issuance of Rev. Proc. 99-17*

Mr. Marandola contests the strictures set out in Rev. Proc. 99-17 on the grounds that the IRS delayed issuance of the Procedure after the 1997 Taxpayer Relief Act was enacted, failed to give adequate public notice of the availability of the newly permissible accounting method, and then prescribed unduly short time deadlines for the election. Pls.' Mot. at 9. Among other things, as previously noted, Congress directed that "[t]he Secretary shall prescribe such regulations as may be necessary or appropriate to carry out the purposes of [I.R.C. Section 475]." I.R.C. § 475(g). However, the government seeks to hold the taxpayers to the strict letter of Rev. Proc. 99-17, urging this court to look to a memorandum decision of the Tax Court concluding that "[t]he legislative history [of the Taxpayer Relief Act of 1997] indicates that the Secretary has authority to prescribe the time and manner of the mark-to-market election." Def.'s Reply at 3 (quoting *Knish v. Commissioner*, T.C.M. 2006-268, 2006 WL 3725132 at *3 (Dec. 18, 2006)); *see also* Hr'g Tr. 13:11-14 (Feb. 27, 2007) ("[T]he legislative history to th[e 1997] statute states that Congress intended that the Secretary would specify the time and manner for making the election.").[16] Mr. Marandola correctly notes that "[t]he revenue procedure came out about a year and a half after the Code section came out." Hr'g Tr. 5:2-3 (Feb. 27, 2007); *see* Rev. Proc. 99-17, § 7. The question arises whether the failure by the IRS to specify the time and manner for a

[16]In this regard, neither party argues that the specific terms of Section 475(f) pertinent to the manner of making an election are subservient to the generally applicable text of I.R.C. § 7805(d) ("Except to the extent otherwise provided by this title, any election under this title shall be made at such time and in such manner as the Secretary shall prescribe.").

taxpayer to make an election under I.R.C. § 475(f) before the deadline for taxpayers to file original tax returns for 1997 creates an exception to the rule that, once the extended due date for an original tax return has passed, a taxpayer must obtain the consent of the IRS in order to amend that tax return to change from one valid accounting method to another.

Regrettably for Mr. Marandola's position, it is blackletter law that "[t]he lack of guidance does not eliminate the statutory requirement to elect." *Kosonen v. Commissioner*, T.C.M. (RIA) 2000-107, 2000 WL 311067, at *6 (2000) (construing I.R.C. § 469(c)(7) ("a taxpayer may elect") to require that, for the taxpayer to benefit from available elective treatment, an election actually must have been made) (citing *Young v. Commissioner*, 783 F.2d 1201, 1206 (5th Cir. 1986) (Higginbotham, J.)); *see also* I.R.C. § 475(f)(1)(A) ("a trader in securities . . . who elects"). Where the IRS has issued no guidance other than proposed regulations, the Tax Court has stated that, "[t]o make an election," a taxpayer still

> must clearly notify the Commissioner of the taxpayer's intent to do so. To make an election, "the taxpayer must exhibit in some manner . . . his unequivocal agreement to accept both the benefits and burdens of the tax treatment afforded" by the governing statute. A taxpayer has not made an election if it is not clear from the return that an election has been made.

*Kosonen*, 2000 WL 311067, at *5 (citing *Knight-Ridder Newspapers Inc. v. United States*, 743 F.2d 781, 795 (11th Cir. 1984), and *Young*, 783 F.2d at 1206). As has been stipulated, "nothing . . . which clearly demonstrated an intent to make the election provided in [I.R.C.] § 475(f)" was included in Mr. Marandola's original tax returns. Stip. ¶ 9; *accord id.* ¶¶ 15, 21.

The absence of guidance from the IRS at the time Mr. Marandola filed his tax return for 1997 might support a lack of knowledge by Mr. Marandola of the availability of the mark-to-market election. Mr. Marandola contends that "he was unaware of the [availability of the] election," Pls.' Mot. at 9, and that, "had he been aware of its existence, he would have made the [Subsection] 475(f) election on time." *Id*. He characterizes the introduction of Subsection 475(f) as "an obscure change to the Tax Code with little publicity," *id.* at 7, averring that he "relied on tax preparers (tax professionals) to timely inform [him] of the election and once informed to properly prepare the election (including any [Subs]ection 481(a) adjustments." Pls.' Resp. at 3. Nevertheless, "[l]ack of knowledge is not an excuse for failing to choose the most profitable option when two valid options are available for computing taxes." *Cummins Engine Co. v. United States*, 17 Cl. Ct. 854, 858 (1989) (citing *J.E. Riley Inv. Co. v. Commissioner*, 311 U.S. 55, 59 (1940) (Douglas, J.)). A taxpayer "is deemed to know the law." *Credit Life Ins. Co. v. United States*, 948 F.2d 723, 727 (Fed. Cir. 1991). As the Fifth Circuit has observed, "[w]ere simple misreading of the Tax Code a valid defense to tax liability, however, we have no doubt that incompetency in providing accounting services would carry a premium." *Young*, 783 F.2d at 1204. A failure by the IRS to issue regulations or guidance on the election allowed by Subsection 475(f) as added by the Taxpayer Relief Act of 1997 does not create an exception to this general rule.

In this same vein, Mr. Marandola challenges the fact that "Rev. Proc. 99-17 gave the taxpayer little more than four months to identify and comply with the requirements of the election." Pls.' Mot. at 7 (referring to the time elapsed from the date Rev. Proc. 99-17 was made available to the public, February 8, 1999, until June 16, 1999, the last date the IRS would permit an amended return "properly reflect[ing] the application of § 475" where an election had been made on the original return).[17] However, the amended returns filed by Mr. Marandola do not refer to Rev. Proc. 99-17 and cannot be read to apprise the IRS that the deadlines for action set in Rev. Proc. 99-17 were being challenged.[18] The court accordingly must determine whether the "substantial variance" rule of I.R.C. § 7422(a) bars consideration of a challenge to the duration of the four-month window established by Rev. Proc. 99-17.

The substantial variance rule generally "bars a taxpayer from presenting claims in a tax refund suit that substantially vary the legal theories and factual bases set forth in a tax refund claim presented to the IRS." *Lockheed Martin*, 210 F.3d at 1371 (citations omitted). This rule, "however, does not preclude [this court] from exercising jurisdiction over a cause of action that is independent and self-executing, regardless of whether the plaintiff filed a refund with the IRS before initiating suit." *Rosenberg v. United States*, 72 Fed. Cl. 387, 392-93 (2006) (citing *Cyprus Amax Coal Co. v. United States*, 205 F.3d 1369, 1376 (Fed. Cir. 2000) (The "Export Clause," U.S. Const., art. I, § 9, cl. 5, "provides a cause of action to recover money that was unlawfully exacted through either a duty or a tax."), and *Hatter v. United States*, 953 F.2d 626, 629 (1992) (The Judicial Compensation Clause, U.S. Const., art. III, § 1, "embraces a self-executing compensatory remedy.")). Nonetheless, any constitutional challenge to the time allowed by Rev. Proc. 99-17 would arise under the Due Process Clause of the Fifth Amendment, and this Clause is not an independently sufficient basis for jurisdiction of this court because the Due Process Clause does "not mandate payment of money by the government." *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995); *cf. General Foods Corp. v. United States*, 530 F.2d. 923, 928-29 (Ct. Cl. 1976) ("In plaintiff's claim [to the IRS] for refund no mention is

---

[17]The Marandolas do not raise a similar claim that the roughly two-month period from February 8 until April 15, 1999, during which Rev. Proc. 99-17 permitted Mr. Marandola to make an election for his 1999 tax year, was impermissibly short. *See* Rev. Proc. 99-17, § 5.03(1).

[18]*See* JX 7 (Amended 1997 Form 1040X) ("to amend return to report, under the mark to market regime, all gains or losses from the sale of securities during the taxable year or, if held on the last business day of the taxable year, on the deemed sale of those securities being so held"); JX 10 (Amended 1998 Form 1040X) ("to amend return for 1998 to report, under the mark to market regime, all gains or losses from the sale of securities during the taxable year or, if held on the last business day of the taxable year, on the deemed sale of those securities being so held"); JX 13 (Amended 1999 Form 1040X) ("to amend return to report, under the mark to market regime, all gains or losses from the sale of securities during the taxable year or if held on the last business day of the taxable year, on the deemed sale of those securities being so held").

made of a claim of unlawful discrimination. Accordingly, this court is without jurisdiction to rule upon a claim not set out in plaintiff's claim for refund.").

Because "[t]he administrative refund claim filed by plaintiff made no mention whatever of th[is] alternative ground," it "cannot now be considered." *Andresen v. United States*, 405 F.2d 1232, 1239 (Ct. Cl. 1969). "The [taxpayer] chose [his] own weapon, began the struggle under it and, at this late date, cannot be allowed to abandon it." *Hertz Corp. v. United States*, 364 U.S. 122, 126 (1960).

### D. *The Possibility of Relief under Treas. Reg. § 301.9100-3*

Lastly, Mr. Marandola urges that he is entitled to relief under Treasury Regulation § 301.9100-3, extending the time he otherwise had to make the Subsection 475(f) election for 1997. Pls.' Mot. at 7. The government responds that this request also is barred by the substantial variance rule. Def.'s Cross-Mot. at 18.

Treasury Regulation § 301.9100-3 authorizes the Commissioner to grant a taxpayer an extension of time to make a regulatory election. Treas. Reg. § 301.9100-3(a). Recently, in *Vines v. Commissioner*, 126 T.C. 279 (2006), the Tax Court found that the IRS had erroneously denied relief under Treasury Regulation § 301.9100-3 to a taxpayer who had sought to make a late Subsection 475(f) election. 126 T.C. at 298-99. The taxpayer in *Vines* had requested relief under § 301.9100-3 by submitting a formal private letter ruling request to the IRS and paying the required user fee. 126 T.C. at 285; *see* Treas. Reg. § 301.9100-3(e)(5) ("A request for relief under this section is a request for a letter ruling. Requests for relief should be submitted in accordance with the applicable procedures for requests for a letter ruling and must be accompanied by the applicable user fee."). The IRS denied relief, a decision the Tax Court reviewed for error. *Vines*, 126 T.C. at 287. In contrast, Mr. Marandola neither requested a private letter ruling nor referred to § 301.9100-3 in the refund requests to the IRS. According to the government, "the first indication that Mr. Marandola [wa]s relying on § 301.9100-3 appears in his argument on brief." Def.'s Cross-Mot. at 19. Mr. Marandola responds that "[a]s a result of filing amended returns and the subsequent examination of the returns, the IRS was on notice regarding the request of relief from a late election by the Plaintiff and his representatives (tax preparers)." Pls.' Reply at 3. Examination-related correspondence between the Marandolas and the IRS is not before this court, and, according to plaintiffs, "[t]here is no additional relevant evidence" besides that which has been provided. Pls.' Mot. at 3.

The court finds that Mr. Marandola has not established that relief under Treasury Regulation § 301.9100-3 was "expressly or impliedly contained in the application for refund" presented to the IRS. Consequently, the court is barred from considering such relief. *Lockheed Martin*, 210 F.3d at 1371; I.R.C. § 7422(a); *but see Acar v. United States*, 2006 WL 2374636, *3-5 (N.D. Cal. Aug. 16, 2006) (considering, but ultimately denying, a taxpayer's request for relief under Treas. Reg. § 301.9100-3 for an untimely election under I.R.C. § 475(f) even though

the recitation of facts fails to disclose whether the taxpayer first requested relief under Treas. Reg. § 301.9100-3 from the IRS).

**CONCLUSION**

For the reasons set forth, the plaintiffs' motion for judgment based on a trial on stipulated facts is DENIED, and the government's cross-motion for judgment is GRANTED. The Clerk is directed to enter judgment accordingly.

No costs.

It is so ORDERED.

s/ Charles F. Lettow
Judge